STATE of Minnesota, Respondent,

v.

Vincent Lanarde SMITH, Appellant.

No. A06–2235.

Court of Appeals of Minnesota.

May 13, 2008.

Lori Swanson, Attorney General, and Susan Gaertner, Ramsey County Attorney,

Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, MN, and Charles F. Clippert, Special Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; SHUMAKER, Judge; and PORITSKY, Judge.*

## OPINION

SHUMAKER, Judge.

Having been convicted of being an ineligible person in possession of a firearm, appellant contends that the district court abused its discretion in allowing *Spreigl* evidence of a prior conviction of the same crime and an incriminating photograph taken at another time. He also contends that his right to a speedy trial was violated. Because the court improperly allowed the *Spreigl* evidence, we reverse and remand on that issue, but we find no violation of appellant's right to a speedy trial.

## FACTS

The primary issue on appeal is whether the district court abused its discretion in allowing the prosecutor to introduce *Spreigl* evidence during appellant Vincent Lanarde Smith's jury trial.

The facts pertaining to this issue show that police officers executed a search warrant on September 15, 2005, at an apartment on Marshall Avenue in St. Paul. This was the residence of Charilyn Suggs, who lived there with her two young children. Smith, the father of the younger child, had a sporadic romantic relationship

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

with Suggs. Although Smith did not live at the Marshall Avenue residence, he sometimes stayed there overnight.

During their search, officers found a .25 caliber handgun between the box spring and the mattress of a bed in Suggs's room. The officers also found clothing that appeared in size and style to be that of an adult male, a prescription-drug bottle showing Smith as the patient, items of correspondence to Smith that listed an address different from Suggs's, and in a basement utility room, a current Minnesota identification card in Smith's name that listed a Minnehaha Avenue address.

When a police sergeant questioned Suggs about the handgun, Suggs stated that it was not hers. When the sergeant asked, "If it's not yours, whose is it?" Suggs replied, "It must be Vincent's."

With this information and the fruits of the search, the state charged Smith with possession of a firearm by an ineligible person, a felony, in violation of Minn.Stat. § 624.713, subd. 1(b) (2004). Smith pleaded not guilty, and a jury trial was held.

During the trial, the court allowed the prosecutor, over defense counsel's objection, to introduce as *Spreigl* evidence, Smith's prior conviction of the same crime and a photograph, taken prior to the incident in question, showing Smith at the Marshall Avenue residence standing near a table on which handguns had been placed.

The jury found Smith guilty as charged. On appeal, he contends that the district court abused its discretion in allowing the *Spreigl* evidence. He also contends that he was denied a speedy trial, an issue that is not dispositive and that we will address briefly for clarification.

## ISSUES

1. The appellant was charged with the crime of unlawful possession of a firearm. At trial, the prosecutor was allowed over defense counsel's objection to introduce, under Minn. R. Evid. 404(b), evidence of the appellant's prior conviction of the identical charge and a photograph showing him in the presence of firearms on an occasion other than the one in issue. Did the district court abuse its discretion in allowing the 404(b) evidence?

2. Because of numerous continuances, appellant did not stand trial until ten months after he was charged. Was appellant's right to a speedy trial violated?

## ANALYSIS

### I. Rule 404(b) (*Spreigl*) Evidence

As of the time of the search that gave rise to this case, Vincent Smith was not eligible to possess a firearm. He never disputed that fact. Rather, he denied that the gun the police found in their search belonged to him or that he possessed it, actually or constructively.

With Smith's defense in mind, the prosecutor invoked Minn. R. Evid. 404(b) and proposed to offer evidence of Smith's prior juvenile-delinquency adjudications in 1997 of possession of a controlled substance and in 1998 of possession of a firearm by an ineligible person; his adult conviction in 2001 of possession of a firearm by an ineligible person; and two photographs, taken before the September 15, 2005 search, purporting to show Smith standing next to a table on which handguns had been placed.

Although the state apparently noted these items in pretrial disclosures, it failed to indicate that any would be offered under rule 404(b) and failed to identify the purpose of the evidence. *See* Minn. R. Evid. 404(b) (requiring that the prosecutor give notice of the intent to offer such evidence and to disclose what the evidence

will be offered to prove). Despite the lack of proper rule 404(b) notice, the prosecutor did indicate before the trial started that he had *Spreigl* evidence to offer, and, at or near the conclusion of the state's case-in-chief, the court held a conference regarding that evidence.

During the conference, the prosecutor stated that *Spreigl* evidence would be offered under rule 404(b) to prove the identity of Smith as the possessor of the gun found at the Marshall Avenue residence. In support of the admissibility of the evidence, the prosecutor argued that the items were relevant and probative to show "that this defendant is the one who possesses firearms, this is the defendant who has possessed firearms in the past. He arms himself regularly. He keeps guns close by." As to the photographs, which showed two men standing next to the table on which the guns were displayed, the prosecutor noted that, when Smith pleaded guilty in 2001 to the firearms possession crime, he admitted being the one who was in charge of a firearm that he and his half-brother jointly owned.

The prosecutor also argued that the credibility of crucial state's witnesses was in dispute. This, he urged, tended to weaken the state's case and made the *Spreigl* evidence necessary. Finally, he contended that admission of the evidence would be fair because defense counsel had made a tardy disclosure of some witnesses.

Defense counsel cited the state's failure to give a proper rule 404(b) notice but did not pursue that violation. Rather, she objected to the *Spreigl* evidence as being impermissible character evidence and as being unfairly prejudicial. She also disputed the admissibility of the photographs on the ground that there was no clear and convincing evidence of when they were taken or of the identity of Smith as one of the men depicted.

The district court ruled that it would be cumulative to allow all of the convictions but that the most recent one, from 2001, was admissible because the "[s]tate's case is fairly weak," and defense counsel did not disclose certain potential witnesses "until the eleventh hour, just prior to beginning trial." The court also stated that one photograph, the clearer of the two, would be allowed, but to allow both would be unfairly prejudicial. The record contains no rule 404(b) analysis of the admissibility of the 2001 conviction and the photograph. Although the court stated at the *Spreigl* conference that it would issue written findings on its rulings, no such findings appear in the record on appeal, and neither party has cited any such findings. Thus, the record regarding the 404(b) evidence consists of the prosecutor's arguments, defense counsel's responses, and the court's statements, all as summarized above.

■ Minn. R. Evid. 404(b), also called the *Spreigl* rule—named for the case, *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965), establishing the same law before the codification of the evidence rules in Minnesota—controls the issue here. That rule precludes evidence of another act extrinsic to the case if the purpose is to show a person's character and then to invite the inference that the person's conduct conformed to that character. Stated another way, the rule bars propensity evidence. *See State v. Washington*, 693 N.W.2d 195, 200–01 (Minn.2005) (noting that propensity to commit crime is an improper purpose of *Spreigl* evidence).

But evidence of another crime, wrong, or act may be "admissible for other purposes." *Id.* at 200. To qualify for rule 404(b) admissibility, other-acts evidence must legitimately serve a relevant purpose other than to show propensity or character. The rule contains an illustrative, non-

exclusive list of "other purposes" that can qualify. *See* Minn. R. Evid. 404(b) (listing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). These "other purposes" are not *exceptions* to the character rule, for that would imply that they still are character-evidence and are admissible as such. *See* Minn. R. Evid. 404(a) (providing exceptions to the character-evidence prohibition). Thus, rule 404(b) permits only strictly non-character uses of evidence.

 We review the admission of rule 404(b) evidence for an abuse of discretion. *State v. Blom*, 682 N.W.2d 578, 611 (Minn. 2004). We will not reverse the district court's allowance of such evidence unless it has been shown that the court clearly abused its discretion. *State v. Spaeth*, 552 N.W.2d 187, 193 (Minn.1996). "A defendant who claims the trial court erred in admitting evidence bears the burden of showing the error and any resulting prejudice." *State v. Ness*, 707 N.W.2d 676, 685 (Minn.2006). If there is a reasonable possibility that the verdict might have been favorable to the defendant had the evidence not been allowed, the evidence is prejudicial and its admission is reversible error. *Id.* at 691; *see also State v. Clark*, 738 N.W.2d 316, 347–48 (Minn.2007) (declining to reverse a district court's erroneous admission of *Spreigl* evidence absent a showing of prejudice by defendant).

Before we discuss the evidence in question, three preliminary observations seem appropriate. First, the prosecutor's argument that Smith is a person who possesses firearms, one who arms himself regularly and also keeps firearms close by, is a classic character-evidence argument. The prosecutor is arguing that Smith has the propensity to possess guns and, at least implicitly, invites the inference that he followed that propensity on the occasion at

issue. Although certain character evidence can be admissible, it has to fit an exception to the character-evidence prohibition in Minn. R. Evid. 404(a)(1)-(3). The prosecutor identified no exception that fits here, and it does not appear that any applies. Despite the prosecutor's character argument, he did identify a proper rule 404(b) purpose, which we discuss below.

Second, in deciding to allow some of the 404(b) evidence, the district court seemed to be persuaded in part by defense counsel's untimely disclosure of certain witnesses. We are unaware of any authority that would support the admission of 404(b) evidence as a remedy or sanction for a discovery violation.

Third, the district court also seemed to be persuaded in part that the state's "fairly weak" case justified admission of the 404(b) evidence. The supreme court in *Ness* cautioned that "courts should not have to rely on the need factor as an independent requirement of admissibility." 707 N.W.2d at 690. Under *Ness*, the state's need for 404(b) evidence is a factor in the overall balancing process the district court must undertake in deciding admissibility. *Id.* The court here appeared to give "need" independent significance.

Acknowledging the history of rule 404(b) jurisprudence in Minnesota since the *Spreigl* case, the supreme court in *Ness* outlined the process to be used for a rule 404(b) analysis at the district-court level:

The court has developed, through the many cases since *Spreigl*, a five-step process to determine whether to admit other-acts evidence. The steps are: (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and mate-

rial to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Id.* at 685–86 (footnote and citations omitted).

## Notice

We have commented above on the inadequacy of the *Spreigl* notice here, but, because Smith has not cited improper notice as a basis for reversal, we need not address the issue further.

## Clear and Convincing Evidence

Evidence is clear and convincing when it is highly probable that it is true. *State v. Kennedy,* 585 N.W.2d 385, 389 (Minn. 1998).

■ Smith pleaded guilty to the 2001 offense, and evidence of this offense was the first item of *Spreigl* evidence admitted here. His plea satisfies the requirement of clear and convincing evidence.

■ The *Spreigl* photograph shows two men, but their faces are covered from the eyes down. Nevertheless, Smith is identifiable from a distinguishing tattoo on his arm; the location of the picture is identifiable as the Marshall Avenue residence through Suggs's testimony; and the approximate timing of the photograph is shown through Suggs's testimony as being after the time she moved into the Marshall Avenue residence in the fall of 2004. The sergeant, at trial, was able to further pinpoint the date of the photographs as taken in the spring of 2005. The evidence is clear and convincing that the photograph shows Smith in the residence where the gun was found, relatively close in time to that discovery, and that he is in close proximity to guns.

## Relevance and Purpose

■ The relevancy of 404(b) evidence can be assessed through an identification and analysis of the purpose for which the evidence is to be offered. The mere statement of the purpose is not to be taken at face value, but rather the court must ascertain the purpose for which the evidence truly is offered. *Ness,* 707 N.W.2d at 686. Thus, the legitimacy of the purpose must be demonstrated, and the talismanic invocation of an item from the rule 404(b) list does not constitute such a demonstration. *See State v. Montgomery,* 707 N.W.2d 392, 398 (Minn.App.2005) ("It is not sufficient simply to recite a 404(b) purpose without also demonstrating an arguable legitimacy of that purpose."). Relevant evidence is that which has "any tendency" making it more likely or less likely that a consequential fact exists than it would be if there were no such evidence. Minn. R. Evid. 401. Here, the consequential and dispositive fact was the identity of the person who possessed the gun found in the search. There was no evidence that Smith actually possessed the gun, but circumstantial evidence tended to link him to it. The other-acts evidence, showing conclusively that at one time he admitted to possessing a gun when he was ineligible to do so and showing convincingly that he was in the presence of guns at the same location and at a time not remote from the date of the search, surely made it more likely that he possessed the gun at issue than if there was no such other-acts evidence. The evidence was relevant for the purpose of showing the identity of Smith as the possessor of a firearm.

## Balancing

Minnesota caselaw is consistent in applying the rule that a 404(b) analysis requires a balancing of probative value against the danger of unfair prejudice.

Some cases have expressly applied the balancing test provided in Minn. R. Evid. 403, namely, that even relevant evidence can be excluded if its probative value is "substantially outweighed by the potential for unfair prejudice." *Washington*, 693 N.W.2d at 201; *see also Ness*, 707 N.W.2d at 688–89 (applying the balancing approach of *Washington* ).

The Minnesota Rules of Evidence were amended in 2006, and rule 404(b) now contains its own balancing test, providing that the probative value of the evidence must not be outweighed by its potential for unfair prejudice. Minn. R. Evid. 404(b).

Our first concern in applying the rule 404(b) balancing test is an assessment of the probative value of the *Spreigl* evidence, which was relevant under the rule 401 "any tendency" requirement. We then must assess the danger that the evidence might cause unfair prejudice to the defendant.

Because virtually all evidence that a party offers in support of the party's case will likely prejudice the opponent's case to some degree, the concern expressed through rule 404(b) is that the prejudice not be unfair. The United States Supreme Court has explained the distinction: "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997).

*2001 Conviction*

■ Smith's 2001 firearms conviction was convincingly shown through his own admission. Whatever probative value that conviction has in establishing identity in this case likely depends on the similarity of the two acts. The more similar the circumstances of each, the more compelling the inference that the same person was involved in each. *Ness*, 707 N.W.2d at 688. The similarity between the 2001 conviction and the current charge begins and ends with the name of the crime and the possession of a handgun.

In 2001, Smith possessed a .9 millimeter handgun, having carried it on his person. He admitted that the gun belonged to him and to others collectively and that he was in charge of keeping it. The location of the possession was not the Marshall Avenue residence. The gun in the current charge was a .25 caliber handgun. No actual possession was shown as to anyone. The gun was in a location that was accessible to several other people, and, because of their overnight stays, those people also had opportunities to place the gun there. There was no showing that Smith had any connection with anyone other than Suggs. Thus, the facts do not support an inference of collective constructive possession with those other people. No ownership of the gun was ever established.

There are more dissimilarities than similarities between the two incidents. But because the prior and current charges are identical, that in itself might have been enough to "lure a juror into a sequence of bad character reasoning," as the Supreme Court expressed in *Old Chief.* 519 U.S. at 185, 117 S.Ct. at 652. The prosecutor here actually demonstrated that type of reasoning when he argued to the court that Smith *is* a possessor of guns; that is what he does, and he does it regularly. We conclude that the danger that the jury would, and likely did, use the prior conviction improperly for character purposes was substantial and that danger outweighed the probative value of the evidence. The district court abused its discretion in allowing this evidence.

*Photograph*

 Taken in 2005 at the Marshall Avenue residence, the *Spreigl* 8½ × 11 color photograph shows a table, on which there are keys, lottery tickets, a cell phone, plastic bags, various bills of U.S. currency, and two visible black handguns. Two men are standing next to the table, and they appear to be posing for the camera. Both are wearing bandanas covering their faces below their eyes. Both are making gestures with their hands that worldly jurors could easily interpret as gang signs.

The photograph clearly shows that neither man is in actual possession of the guns. It shows nothing from which to infer to whom the guns belong. It does not necessarily even show joint constructive possession, although that inference is plausible. But the nearly inescapable message the picture conveys is that these are gun-toting gangsters. There is a gun for each, and they are displaying their loot and hiding their identities.

Even though it is not illegal for Smith to be in the presence of firearms—as long as he does not possess them—the photograph is so bluntly compelling that it is unlikely that a jury would—or that this one did—make any distinction between presence and possession. The picture associates Smith with firearms and does so with a nefarious connotation.

Because the photograph invites an inference that the men depicted are criminals, it has substantial potential for activating a sequence of impermissible character reasoning that could cause the jury to decide the case on an improper basis. We conclude that the danger of unfair prejudice from this evidence outweighs its probative value and that the district court abused its discretion in allowing it.

Two additional observations pertinent to this case need to be made regarding 404(b) evidence. First, if the evidence is of another crime or wrongful act, it likely will carry a "propensity taint" to some extent. That in itself does not justify exclusion:

> The rule is one of inclusion. It authorizes the admission of a party's conduct that is extrinsic to the matter on trial for any relevant reason other than to prove the party's propensity to do the thing at issue. It would be indulging in fiction to say that admissible other conduct evidence must be completely free of any propensity taint. A reasonable fact finder might entertain that notion no matter how careful the trial judge is in defining the limited purpose of the evidence. The mere existence of the possibility of misuse is not enough to bar the evidence if it fits within ... 404(b). It is enough to call on the judge to carefully exercise his discretion.

Thomas A. Mauet & Warren D. Wolfson, *Trial Evidence* § 5, at 103 (1997).

Thus, our holding that the *Spreigl* evidence should have been excluded is not based on the mere possibility that the jury might use the evidence improperly but rather on the substantial and demonstrable danger that it would in fact do so because of the nature of each *Spreigl* item.

Our second observation reflects a statement in the Advisory Committee Note to the Federal Rules of Evidence, from which the Minnesota rules were derived. Commenting on the issue of determining whether to exclude evidence because of potential for unfair prejudice, the committee indicates that the likelihood of the effectiveness of a limiting instruction—which the court properly gave here—is a consideration, and "[t]he availability of other means of proof may also be an appropriate factor." Fed.R.Evid. 403 1972 advisory comm. note. Even though the other proof here rested on circumstantial evidence, it was not insignificant in linking Smith to

the location of the gun and the gun itself. His identification card, prescription-drug bottle, and correspondence all link him to the residence. A DNA sample was obtained from the gun. An expert witness testified that five out of sixteen genetic locations produced a match to Smith's DNA as a predominant profile. And Suggs, despite some reluctance, also linked Smith directly to the gun.

Each of the *Spreigl* items is independently excludable under the 404(b) balancing test. Taken together—as happened at trial—the danger of unfair prejudice increased immensely and likely made it impossible for the jury to resist the nearly overwhelming character implication the evidence invited.

## II. Speedy Trial

██ Smith's second claim is that, because it took ten months for his case to come to trial, his constitutional right to a speedy trial was violated and he is entitled to a dismissal of the case.

██ A person accused of a crime has a constitutional "right to a speedy and public trial." U.S. Const. amend VI; Minn. Const. art. I, § 6. Whether that right has been violated is a question of law that we review de novo. *State v. Cham,* 680 N.W.2d 121, 124 (Minn.App.2004), *review denied* (Minn. July 20, 2004).

██ Minnesota rules require that trial be commenced within 60 days of a defendant's demand for a speedy trial, unless good cause is shown why trial cannot be started within that time. Minn. R.Crim. P. 11.10. A ten-month delay raises a rebuttable presumption of prejudice and warrants further analysis. *See State v. Jones,* 392 N.W.2d 224, 235 (Minn.1986) (finding seven-month delay sufficient to trigger further analysis). The speedy-trial analysis entails an assessment of the so-called *Barker* factors, namely, (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant demanded a speedy trial; and (4) the extent to which the delay prejudiced the defendant. *State v. Windish,* 590 N.W.2d 311, 315 (Minn.1999) (citing *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972)).

Smith was charged with the crime at issue on October 6, 2005. He demanded a speedy trial on October 27, 2005. As of that date, Smith was represented by a public defender. Trial was set to begin on December 5, and the state was ready to proceed. A newly assigned public defender requested a continuance. The trial was reset for December 12 and December 14, and the state was ready to proceed, but Smith's attorney again requested continuances.

Smith pleaded guilty on January 30, 2006, and was released from custody. This obviated the necessity for a speedy trial. Sentencing was set for April 18. But Smith was charged on another matter while on release pending sentencing, and the court refused to honor the January plea agreement.

On May 2, the court allowed Smith to withdraw his plea of guilty, and on May 11, Smith reasserted his speedy-trial demand. Trial was set for July 17. On July 18, Smith withdrew his speedy-trial demand and asked for a one-week continuance. The court granted that continuance, and then on July 25, at Smith's request, the court granted a two-week continuance. Trial began on August 7, 2006.

All delays in this matter were for good cause and most were attributable to Smith's attorney's need for time to prepare an adequate defense. Furthermore, when Smith pleaded guilty, his speedy-trial right evaporated, and any delay up to that time was nullified by his plea. He

reasserted his right to a speedy trial on May 11, and the matter was ready on July 17, seven days beyond the 60–day requirement. Smith did not object to that relatively brief delay, and on the next day he waived his right to a speedy trial and did not reassert it.

Thus, there was a delay of seven days beyond the 60–day limit. Smith has failed to show any prejudice because of that short delay. Smith's right to a speedy trial was not violated.

## DECISION

Because the district court admitted *Spreigl* evidence that was unfairly prejudicial, appellant is entitled to a new trial, despite the fact that he was not denied his constitutional right to a speedy trial.

**Reversed and remanded.**