**STATE of Minnesota, Respondent,**

v.

**Paul Joseph WELLE, Appellant.**

**No. A13–0256.**

Court of Appeals of Minnesota.

May 27, 2014.

---

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, MN; and Mark S. Rubin, St. Louis County Attorney, Duluth, MN, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; PETERSON, Judge; and RANDALL, Judge.

## OPINION

HUDSON, Judge.

Appellant challenges his convictions of unintentional second-degree murder and first-degree manslaughter, arguing that the admission of his three prior assaults as other-acts or *Spreigl* evidence constituted impermissible character evidence. Because we conclude that the district court abused its discretion by admitting the evidence to rebut appellant's self-defense claim when that evidence did not tend to disprove the elements of self-defense and it unfairly prejudiced the defense, we reverse and remand for a new trial.

## FACTS

Appellant Paul Joseph Welle punched D.A. in the face outside a bar in Proctor after the two men had been talking to a group of young women inside the bar. D.A. fell back, his head struck the pavement, and he died without regaining consciousness. A jury convicted appellant of one count of unintentional second-degree murder, with a predicate felony of first-degree assault, in violation of Minn.Stat. § 609.19, subd. 2(1) (2010), and one count of first-degree manslaughter, causing death while violating the fifth-degree assault statute, in violation of Minn.Stat. § 609.20, subd. 2 (2010). Before trial, the defense gave notice of intent to raise a claim of self-defense under Minn. R.Crim. P. 9.02, subd. 1(5)(a). To rebut the self-defense claim, the state moved to admit as other-acts or *Spreigl* evidence three prior incidents of assault from 2001, 2002, and 2003, and two incidents of domestic assault. The district court issued a written order granting the motion as to the three assaults from 2001 through 2003, but denying the motion as to the two domestic assaults.

According to testimony at trial, three young women at the bar spoke to D.A., who bought them drinks but did not act inappropriately. One young woman, E.H., testified that her friend, K.H., appeared intoxicated and danced with appellant. E.H. testified that D.A. asked her whether appellant had been bothering the women and then spoke with appellant. M.C.W., a man who accompanied appellant to the bar, testified that an older man tapped M.C.W. on the shoulder, acting in a somewhat aggressive manner, and said that he was the girls' father.

M.W., another bar patron, testified that one of the young women told him that a man wanted to go home with her, but she did not want to go. He testified that he

heard D.A. tell her to say that he was her father, and he would "take care of it." M.W. testified that about fifteen minutes later, he saw appellant and D.A. arguing, with appellant making aggressive pointing motions and D.A. gesturing as if he did not want trouble. D.A. and appellant then exited the bar. Within about fifteen seconds, M.W. followed them outside and saw D.A. lying on the ground, with appellant bending over him. He directed appellant back inside, but appellant fled.

Police located appellant later that evening in a Duluth hotel, where he told police that D.A. told him to leave the women alone or he would take appellant outside and "destroy" him, that appellant acquiesced, and that outside, D.A. hit him in the face, and he hit D.A. back to defend himself. The officers did not observe any injuries to appellant's face. The next day, appellant left a message for police, stating that D.A. had stepped on his foot. A day later, appellant gave another statement to a BCA agent, indicating that he had acted in self-defense and that D.A. had told him that he was a Vietnam veteran and had "killed people before."

The state called eight witnesses to testify about the three *Spreigl* incidents.

### 2001 Incident

M.H., then a co-worker of appellant's, testified that, in 2001, appellant had called him at work to tell him that M.H.'s girlfriend was flirting with another man. He testified that after he called appellant a "loser," appellant met him after work outside and punched him in the face. An investigating officer testified that appellant had claimed that M.H. made the first contact and that he hit M.H. in self-defense. Appellant pleaded guilty to disorderly conduct.

### 2002 Incident

D.L., who was staying at appellant's mother's home in 2002, testified that appellant wanted the oil in his car changed, but D.L. refused and stated that he would do it later. D.L. testified that appellant then punched him in the face. One investigating officer testified that appellant at first denied the incident, but later admitted it, and another officer testified that, according to a witness, appellant punched D.L. five to six times, unprovoked. The state introduced photographic evidence of D.L.'s injury, a broken facial bone. Appellant's half-brother also testified, but stated that he did not remember the incident. Appellant pleaded guilty to third-degree assault.

### 2003 Incident

A sheriff's deputy testified that, while investigating a report of a 2003 stabbing, he learned from a witness that appellant and another man, A.R., had been arguing and that appellant had shoved A.R. against the couch, retrieved a knife from the kitchen, and punched A.R. in the face. According to the deputy, appellant told him that A.R. had swung a beer bottle and threatened to kill him, so that he acted in self-defense. The officer testified that A.R. had a facial injury consistent with a stab wound. Appellant's sister-in-law also testified from an earlier statement that she had left the room and did not see appellant strike A.R. with a knife. Appellant pleaded guilty to gross-misdemeanor fifth-degree assault.

After the state rested, appellant testified in his own defense. He testified that D.A. approached him and stated he was the young women's father and to leave them alone, as well as that he was a Vietnam veteran who had killed people. Appellant testified that he had explained that he was only there to have a good time, but D.A. grabbed his arm, said he was going to

"destroy" appellant, and asked appellant to go outside; appellant then said, "lead the way." Appellant testified that outside, D.A. stepped on his foot and started swinging, hitting him in the shoulder and the side, and that appellant then struck back, and D.A. moved off and fell backwards. He acknowledged that when a person came out to investigate, he became scared and ran off.

Appellant also testified to explain the three *Spreigl* incidents. As to the 2001 incident, he testified that he wanted to "get into [M.H.'s] face," that M.H. hit him, and that he hit M.H. back, but the incident was "totally [his] fault." As to the 2002 incident, he testified that D.L. had been "trying to ... start problems between [appellant and appellant's] girlfriend" and that when D.L. would not change the oil, appellant punched him. He admitted that he had initially denied the assault to police and that he had "no excuse" for his conduct. As to the 2003 incident, he testified that A.R. told him to shut up or he would kill appellant and his family and "got in [his] face," appellant pushed him, A.R. swung a beer bottle at him, and appellant then punched him. Appellant testified that he did not have a knife or stab A.R. and that he had acted in self-defense.

The jury convicted appellant of both counts. The district court sentenced appellant to 216 months on the second-degree unintentional murder count, the top end of the presumptive guidelines sentencing range. This appeal follows.

## ISSUE

Did the district court abuse its discretion by admitting evidence of appellant's three prior assaults as other-acts or *Spreigl* evidence?

## ANALYSIS

■ We examine the district court's decision to admit evidence of other crimes or bad acts, also known as *Spreigl* evidence, for an abuse of discretion. *State v. Washington*, 693 N.W.2d 195, 200 (Minn. 2005); *State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965). If the evidence was erroneously admitted, this court must determine whether there is "a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Fardan*, 773 N.W.2d 303, 320 (Minn.2009) (quotation omitted). If such a possibility exists, the error is prejudicial, and a new trial is required. *Id.*

■ Evidence of a person's other crimes, wrongs, or acts is generally inadmissible to prove a person's character to show that the person acted in conformity with that character. Minn. R. Evid. 404(a). But evidence of other crimes or acts may be admissible for other limited purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b). "The overarching concern behind excluding [*Spreigl*] evidence is that it might be used for an improper purpose, such as suggesting that the defendant has a propensity to commit the crime or that the defendant is a proper candidate for punishment for his or her past acts." *Fardan*, 773 N.W.2d at 315 (quotations omitted). To qualify for admissibility, the other-acts evidence must legitimately show a relevant noncharacter purpose. *State v. Smith*, 749 N.W.2d 88, 92 (Minn.App.2008).

■ In seeking to admit *Spreigl* evidence, the state must satisfy five procedural safeguards: (1) provide notice, (2) clearly indicate what the evidence will be offered to prove, (3) offer clear and convincing evidence that the defendant participated in the prior act, (4) show that the

evidence is relevant and material to the state's case, and (5) show that the probative value of the evidence is not outweighed by its potential for unfair prejudice. *State v. Ness,* 707 N.W.2d 676, 685–86 (Minn.2006). "When it is unclear whether *Spreigl* evidence is admissible, the benefit of the doubt should be given to the defendant and the evidence should be excluded." *State v. Kennedy,* 585 N.W.2d 385, 389 (Minn.1998).

 Appellant has not challenged the adequacy of the *Spreigl* notice or contested that there is clear and convincing evidence that he committed the prior offenses. We therefore examine the other-acts evidence to ascertain "the real purpose for which [it] is offered." *Ness,* 707 N.W.2d at 686 (quotation omitted). The district court stated that it was admitting the evidence to show appellant's intent, as well as a common scheme or plan. When analyzing the admission of *Spreigl* evidence for the purpose of establishing intent, the district court must consider the "kind of intent required and the extent to which it is a disputed issue in the case." *Id.* at 687. The district court found that, because there were no witnesses to the offense, appellant's prior assaults would be helpful to the jury in determining his intent, which the district court noted as his "attempts to excuse his violence with false claims of self-defense." But assault-harm is a general-intent crime, which requires only that "the defendant engaged intentionally in specific, prohibited conduct." *State v. Fleck,* 810 N.W.2d 303, 308–09 (Minn.2012) (quotation omitted). Because appellant has not contested that he intended to hit D.A., intent is not an issue in the case. *Cf. State v. Smith,* 541 N.W.2d 584, 589 (Minn. 1996) (holding that the district court did not abuse its discretion by admitting *Spreigl* evidence to show that the defendant intentionally participated in a rob-

bery, rather than firing his weapon in self-defense). Therefore, to the extent that the district court ruled that the *Spreigl* evidence was admissible to show intent, it erred by doing so.

 The district court also ruled that the prior assaults were admissible to show a common scheme or plan, in order "to counter [appellant's] claim of self-defense by establishing a modus operandi from prior behavior." Other-acts evidence may be used to show a common scheme or plan if the prior offenses have a "marked similarity in modus operandi to the charged offense, [so that they] tend to corroborate evidence of the latter." *Ness,* 707 N.W.2d at 688 (quotations omitted). As the district court noted, the state offered the *Spreigl* evidence not to establish that appellant committed the act of striking D.A., to which he admitted, but to counter his self-defense claim. The state has not challenged the district court's implicit determination that appellant satisfied his burden to go forward with evidence supporting his claim of self-defense. *See State v. Basting,* 572 N.W.2d 281, 286 (Minn.1997) (stating that the defendant has the initial burden to produce evidence to support a self-defense claim, and if that burden has been met, the burden shifts to the state to disprove the elements of self-defense beyond a reasonable doubt). The defense emphasized a self-defense theory in its opening statement, and in cross-examining M.C.W., the defense elicited testimony tending to show that D.A. was acting aggressively before he exited the bar with appellant. Therefore, the state was required to disprove one or more of the self-defense elements. *See id.* at 285 (listing elements of self-defense as the absence of aggression or provocation on the part of the defendant, the defendant's actual and honest belief of danger of death or great bodily harm, reasonable grounds

for that belief, and the absence of a reasonable possibility of retreat). The state, however, did not articulate how appellant's participation in the earlier assaults was relevant to disproving the elements of self-defense. Even though appellant showed a pattern of overreacting to perceived slights, his participation in those assaults was not probative of whether appellant acted aggressively or provoked D.A., whether he had an honest belief of danger or reasonable grounds for that belief, or whether he had a reasonable possibility of retreat. Therefore, we conclude that the proffered *Spreigl* evidence was not relevant to the issue of self-defense.

 Further, even if we were to conclude that the evidence was relevant, under the final *Ness* factor, the probative value of the evidence is outweighed by its prejudicial effect. *See Ness*, 707 N.W.2d at 689. In this analysis, the district court evaluates the prosecution's need for the evidence, balanced against the potential for unfair prejudice to the defense. *Id.* at 690. Unfair prejudice in the context of *Spreigl* evidence means that the evidence "persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn.2006) (quotation omitted). "[T]he risk of prejudice lies . . . in [the] potential [of the evidence] to influence the jury that if the defendant committed the *Spreigl* offense he must be guilty of the charged offense." *State v. Robinson*, 604 N.W.2d 355, 364 (Minn. 2000).

Here, the other-acts evidence admitted by the district court had significant potential for unfair prejudice to appellant. It showed that he committed three prior assaults with minimal, if any, provocation and then claimed that he was defending himself. Thus, the evidence illustrated a propensity to act aggressively toward another while claiming that he was not at fault, and the evidence directly invited the jury to infer that in this instance, appellant was acting in conformity with that character. *See, e.g., Smith*, 749 N.W.2d at 97 (noting that the danger of unfair prejudice arising from several *Spreigl* incidents "likely made it impossible for the jury to resist the nearly overwhelming character implication the evidence invited").[1] We therefore conclude that the district court abused its discretion by admitting this *Spreigl* evidence.

 The state argues that, even if the evidence was admitted in error, that error was not prejudicial because there is no reasonable possibility that it significantly affected the verdict. *See Fardan*, 773 N.W.2d at 320. We disagree. To justify a new trial, the wrongfully admitted evidence must demonstrate "real and discernable" prejudice to the defense. *Ness*, 707 N.W.2d at 691. Here, the possibility for the jury to become unduly focused on appellant's prior misconduct was strong because the state presented testimony from eight witnesses relating to the three prior

1. Although the district court did not fully address whether the other-acts evidence constituted improper character evidence under Minn. R. Evid. 404(a), we note that, unless the defendant has presented evidence of his character, the state may not introduce evidence of prior misconduct to establish the assaultive propensity of a defendant. *State v. Langley*, 354 N.W.2d 389, 396 (Minn.1984), *abrogated on other grounds by State v. Her*, 781 N.W.2d 869 (Minn.2010). "The inquiry [respecting character evidence] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Old Chief v. United States*, 519 U.S. 172, 181, 117 S.Ct. 644, 650–51, 136 L.Ed.2d 574 (1997) (quotation omitted).

offenses, as well as photographic evidence of one prior victim's injuries. *Cf. Ture v. State*, 681 N.W.2d 9, 14, 16 (Minn.2004) (affirming conviction, but noting redundancy when state presented testimony from 24 witnesses on a defendant's prior crime for 3 of 12 days of trial testimony). In addition, the prosecutor reviewed this testimony during closing argument, arguing to the jury that "[i]t always seems to be someone else's fault" and that the jury could consider the prior incidents when reaching their verdict. And appellant testified in rebuttal that he was at fault in two of the incidents, despite first claiming that he acted in self-defense. Therefore, his testimony merely highlighted the damaging evidence by showing a propensity to respond aggressively to perceived slights. Thus, the error in admitting the evidence pervaded the trial, and we reverse appellant's convictions and remand for a new trial.[2]

■ Finally, we observe that the district court issued its written order admitting the *Spreigl* evidence before trial. We recognize that the district court followed proper procedures of considering a motion in limine and instructing the jury not to convict appellant on the basis of his prior acts. But "[t]he final determination of the strength of the state's case should be made by the [district] court *after* the state has presented all of its non-*Spreigl* evidence." *Kennedy,* 585 N.W.2d at 392 (emphasis added). "At that juncture, the [district] court can fully assess whether or not the *Spreigl* evidence is crucial to the state's burden of proof." *State v. DeWald,* 464 N.W.2d 500, 504 (Minn.1991). Especially in a case when the state introduces the evidence to rebut an affirmative defense,

making the *Spreigl* ruling before trial may hamper the district court's ability to determine the state's need for the evidence and fully assess its potential prejudice to the defense. On any retrial, we caution the district court to issue any such ruling at the appropriate time during trial. *See id.*

## DECISION

The district court abused its discretion by admitting *Spreigl* evidence of appellant's three prior assaults before trial to disprove his theory of self-defense, when the state failed to show how the evidence was relevant to disproving self-defense and the probative value of the evidence was outweighed by its prejudicial effect. Because a reasonable possibility exists that the other-acts evidence significantly influenced the jury to convict appellant, he is entitled to a new trial.

**Reversed and remanded.**

RANDALL, Judge * (concurring specially).

I concur in the majority's analysis that the offered *Spreigl* evidence did not meet the burden of having a direct bearing on one of the elements of the charge. I write separately because I find an even more serious error: that is, the state being allowed in its case-in-chief to present rebuttal evidence when there was *nothing to rebut.* The defendant had not taken the stand and had not presented a shred of evidence. The record does show that appellant's attorney mentioned self-defense in opening argument, but opening arguments *are not evidence.* In every case,

---

**2.** Our decision makes it unnecessary to address arguments relating to appellant's sentencing or those advanced in his pro se supplemental brief, which were not raised below. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn. 1996) (stating that this court does not general-

ly decide issues that were not considered by the district court).

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the district court instructs the jury specifically that opening statements of counsel are not evidence. That is chiseled in stone.

Here, the state in its case-in-chief was allowed to present the defendant's "bad character" and "propensity to do the crime" under the subterfuge of rebuttal—when as I have just noted, at that stage there was nothing to rebut.[3] At least with "bad character" evidence and "impeachment by conviction" evidence, the guidelines are clear and as fair as they can be. *See* Minn. R. Evid. 405, 609 (stating rules, respectively, regarding admission of character evidence and evidence of prior convictions). If the defendant does not produce good character evidence of his own (he has that choice), the state cannot get into evidence all the bad character evidence it has in its arsenal, just waiting for the defense to "open the door." If the defendant chooses his constitutional right not to take the stand, all the bona fide impeachment-by-conviction evidence the state has on hold, stays on hold. In this case, the state got its rebuttal evidence into its case-in-chief, which severely impinged on appellant's constitutional right to make a last-minute decision to take the stand or not take the stand.

I have repeatedly called this *Spreigl* evidence rebuttal evidence. That is exactly the case and only the case. There was no pretense that it was direct or circumstantial evidence: as the majority states, "[e]specially in a case when the state introduces the evidence to rebut an affirmative defense, making the *Spreigl* ruling before trial may hamper the district court's ability to determine the state's need for the evidence and fully assess its potential prejudice to the defense."

A note on *Spreigl:* it is basically the most overused and misapplied rule of evidence in criminal cases in the State of Minnesota. An empirical study will show that in federal court (which, to the criminal defense bar, is generally considered a tougher place to try cases than Minnesota state court), the use of *Spreigl* evidence is not that favored. Federal judges pay strict attention to their rule mirroring ours, Fed.R.Evid. 404(a), which makes "bad character" evidence inadmissible unless it comes in on rebuttal and does not allow the use of *Spreigl* evidence just to show the defendant's propensity to do that crime, which is the only real reason in state or federal court that the state introduces *Spreigl* evidence: the state wants to show that the defendant has bad character and that he has a propensity to commit the crime for which he is currently on trial.

In Minnesota over the last two decades, the test for admitting *Spreigl* evidence has devolved into, "Well, gee, was it offered?" The state scatterguns all the different areas under the rule. *See* Minn. R. Evid. 404(b) (stating admissible purposes of other-acts evidence to prove motive, intent, opportunity, plan, preparation, identity, knowledge, or absence of mistake or accident). Then the *Spreigl* evidence comes in on some usually flimsy hookup to some element of the crime, and comes in intentionally to show bad character and propensity to commit today's crime, because the defendant "did it before." Both are inadmissible on their face, but the state wants them in, and defense counsel wants them out, because any common-sense lay juror will take prior bad acts to show bad character and propensity to commit bad acts.

---

3. Evidence of bad character can be admissible if a defendant in a criminal case "opens the door" by producing his own good character evidence, Minn. R. Evid. 405(a), but that is not an issue in this case.

If I were on a jury and a defendant was on trial for burglary, and the state *Spreigl*-ed in three prior burglaries over the last 5, 10, or 20 years,[4] I would consider that as evidence of the defendant's bad character and his propensity to commit burglaries, including the one for which he is on trial. If some juror said in posttrial deliberations, "Gee, the judge said we were only supposed to consider the prior burglaries as evidence of some element and could not consider it as evidence of bad character or propensity to commit burglary," we would all look at that person and wonder what case he or she was hearing. If you don't understand this, you have never in your life prosecuted or defended a criminal case to a jury in which there was *Spreigl* evidence.

Even when properly admitted, and I see that very seldom, *Spreigl* evidence will impugn the defendant's character and will mark him as a person with a propensity to commit the crime under consideration. He will have to live with that as a result of his own past life, but because it is such serious evidence, it has to be understood and limited. *Spreigl* evidence is *never* more probative than prejudicial. *Spreigl* evidence is always far more damaging and far more prejudicial than probative.

When examined in light of *Spreigl's* original intent, this evidence is weak collateral evidence at best. It is not direct or circumstantial evidence, like eyewitness testimony, fingerprints, blood tests, ballis-

tics tests, DNA, or whatever else we tend to call "hard evidence." It is just evidence of some prior bad acts, which may (or may not) bear on the elements of the crime charged.[5]

To right this scar on our legal system, I strongly support the majority's analysis, requiring the state to show specific acts that bear directly on a specific element of the crime. I write further to state that "rebuttal evidence," which even the state does not dispute is at issue here, cannot come into a criminal trial *before* there is some evidence to rebut. Once the state claims that the defendant has put some evidence at issue, the district court *then* decides whether the state's proffered *Spreigl* evidence is admissible rebuttal, and only then allows it to go to the jury, prefaced at that time with the standard cautionary instruction on *Spreigl* evidence, which will then later be repeated in the court's final instructions. Then, the defendant's constitutional right to take the stand, or not take the stand, is not unconstitutionally impinged by the state, which in this case it was. The state put before the jury in its case-in-chief what it thought the defendant might say, and now it counters that with its evidence of how his version is incorrect before he even gave that version.

Finally, state and federal courts are replete with cases condemning the prosecution's allusion to, or inference to, the fact

---

4. The rules surrounding inadmissibility of *Spreigl* evidence as to staleness of time and place are weak. The Minnesota Supreme Court has affirmed stale *Spreigl* evidence nearly 20 years old. *See, e.g., State v. Rainer*, 411 N.W.2d 490, 498 (Minn.1987) (concluding that district court did not abuse its discretion by admitting *Spreigl* evidence of crimes occurring 16–19 years before charged offense). The rules surrounding inadmissibility of impeachment by conviction are clear, more strict, and have some semblance of fairness.

*See* Minn. R. Evid. 609 (setting forth standards, including time limits, for admitting impeachment evidence of prior convictions). The rules surrounding the admissibility of *Spreigl* evidence do not.

5. The "bad acts" usually consist of some prior, often years-ago, alleged misconduct, which, if called to a local county attorney's attention and investigated, was passed on as not worthy of prosecution.

that a defendant did not take the stand. *See State v. Whittaker,* 568 N.W.2d 440, 451 (Minn.1997) ("[A] prosecutor at a defendant's trial shall not allude to the defendant's failure to testify."). Appellant happened to take the stand in this case, but his objective right to take the stand at the last minute was severely impacted by the state's case-in-chief, which openly inferred to the jury that he would take the stand and put on some evidence that would say such-and-such. Here, if appellant did not take the stand, what would the jury opine about his self-defense argument, which the state put in front of the jury?!