STATE OF MINNESOTA

IN SUPREME COURT

A13-0256

State of Minnesota,

        Appellant,

vs.

Paul Joseph Welle,

        Respondent.

## ORDER

On petition of respondent Paul Joseph Welle for rehearing and correction of the court's opinion, and based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that:

1.    The sentences "Reversed" on page 2 and on page 13 of the slip opinion filed on June 24, 2015, are modified to read as follows: "Reversed and remanded."

2.    The sentence on page 2 of the slip opinion that reads "We reverse the court of appeals" is modified as follows: "We reverse and remand to the court of appeals for consideration of Welle's remaining arguments."

3.    The slip opinion is further modified by the addition of a footnote after the sentence modified by paragraph 2 of this order. The text of the added footnote shall read as follows:

At the court of appeals, Welle raised a number of issues in his brief and his pro se supplemental brief. Because it reversed on the improper admission of other crimes evidence, the court of appeals did not address any of the other issues raised by Welle.

4.   The sentence "For the foregoing reasons, we reverse the court of appeals" on page 13 of the slip opinion is modified as follows: "For the foregoing reasons, we reverse and remand to the court of appeals for consideration of Welle's remaining arguments."

5.   The attached slip opinion, amended as stated above, shall be substituted for the opinion filed June 24, 2015.

Dated: July 30, 2015

BY THE COURT:

_____
Alan C. Page
Associate Justice

STATE OF MINNESOTA

IN SUPREME COURT

A13-0256

Court of Appeals                                                          Page, J.

State of Minnesota,

                          Appellant,

vs.                                                              Filed:  June 24, 2015
                                                         Office of Appellate Courts
Paul Joseph Welle,

                          Respondent.

_____

Lori Swanson, Attorney General, Matthew Frank and Karen B. Andrews, Assistant Attorneys General, Saint Paul, Minnesota; and

Mark Rubin, St. Louis County Attorney, Duluth, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellant Public Defender, Roy G. Spurbeck, Assistant State Public Defender, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The trial court did not err when it admitted evidence of other crimes, wrongs, or acts relating to 2001 and 2003 incidents involving respondent because the evidence was relevant and material to disproving at least one of the elements of respondent's self-defense claim and its probative value outweighed its potential for unfair prejudice.

1

2.	The trial court erred when it admitted evidence of other crimes, wrongs, or acts relating to a 2002 incident involving respondent because the evidence was neither relevant nor material to disproving any of the elements of respondent's self-defense claim. The error, however, was harmless because admission of this evidence did not significantly affect the verdict.

Reversed and remanded.

## OPINION

PAGE, Justice.

Following a jury trial in St. Louis County District Court, respondent Paul Joseph Welle was found guilty of: (1) unintentional second-degree murder, in violation of Minn. Stat. § 609.19, subd. 2(1) (2014); and (2) first-degree manslaughter, in violation of Minn. Stat. § 609.20(2) (2014), in connection with the death of 60-year-old Dale Anderson. The trial court convicted Welle of unintentional second-degree felony murder and sentenced him to an executed term of 18 years in prison. On appeal, the court of appeals concluded that the trial court committed reversible error by improperly admitting evidence of other crimes. We reverse and remand to the court of appeals for consideration of Welle's remaining arguments.[1]

Evidence at trial established the following facts. On November 6, 2011, around 12:30 a.m., Dale Anderson and his brother went to the Powerhouse Bar in Proctor. While there, Anderson and his brother met and socialized with three women in their early 20s:

---

[1]	At the court of appeals, Welle raised a number of issues in his brief and his pro se supplemental brief. Because it reversed on the improper admission of other crimes evidence, the court of appeals did not address any of the other issues raised by Welle.

2

L.B., E.H., and K.H. Later that night, 32-year-old Welle and his friend M.W. arrived at the Powerhouse Bar. Welle and M.W. also socialized with L.B., E.H., and K.H. At some point, Welle danced with K.H., who was intoxicated. After K.H. returned from the dance floor, Anderson asked E.H. if Welle was bothering them. E.H. responded: "He's not bothering me. He might be bothering her," referring to K.H. Anderson replied: "You tell him I'm your father, and I'll take care of it." A short time later, Anderson and Welle exchanged words and a witness overheard Welle say: "You don't threaten me. Nobody threatens me. Outside now." Anderson left the bar and Welle followed. About 20 seconds after Anderson and Welle walked out of the bar, one of the bar's patrons went outside and saw Anderson lying on the ground bleeding from the head. Welle fled from the scene. Anderson was transported to a hospital where he later died from a skull fracture.

After fleeing the scene, Welle called his wife, G.W., and asked her to pick him up, which she did. At some point, Welle told G.W. about the incident with Anderson, explaining that Anderson hit him first and that he punched Anderson in self-defense. G.W. told Welle to call the police and explain that he was defending himself when he hit Anderson. Welle eventually called 911 and indicated that he had been involved in an altercation outside the Powerhouse Bar in which he hit a man in self-defense. Later that night, the police met with Welle and G.W. to discuss the incident. During this meeting, Welle told the police that he and M.W. were talking to L.B., E.H., and K.H. when Anderson told him: "You better stop it right now or I'm going to take you outside and destroy you." Welle further claimed that he responded by saying: "Show me the way."

3

Welle told the police that, once outside, Anderson hit him once in the face and that he hit Anderson back in self-defense, which caused Anderson to fall backwards. G.W. corroborated Welle's story. G.W. told the police that, as she was pulling up to the bar to pick up Welle, she saw Anderson hit him, and that Welle hit him back. Welle, who did not have any noticeable injuries, received a ticket for misdemeanor assault and was informed that the charges could be upgraded depending on Anderson's medical condition. The next day, G.W. called the police and told them that she had lied about what she had seen the night before. G.W. explained that she was not present when the altercation took place between Anderson and Welle, and that Welle had told her to lie for him.

Welle was interviewed on November 8, 2011, by agents from the Bureau of Criminal Apprehension (BCA). During this interview, Welle added new details about what had occurred leading up to the altercation with Anderson. According to Welle, before they went outside, Anderson told him that Anderson was "a Vietnam Vet" who had killed people. Welle then explained that when they went outside, Anderson stepped on his foot and hit him once in the left shoulder and once in the ribs. Welle responded, hitting Anderson once, which caused Anderson to fall to the ground. Welle claimed that his wife was there at the time and that he left with her after the fight because he was drunk and wanted to leave. He also indicated that his foot had been injured during the altercation and claimed that he had seen a doctor for the injury. The agents spoke with Welle's wife, who again indicated that she was not present when the fight occurred.

4

Anderson died from his injuries on November 9, 2011. The State subsequently charged Welle with unintentional second-degree felony murder, with the predicate felony being first-degree assault, and first-degree manslaughter, causing death while committing fifth-degree assault. Before Welle's trial, the State notified the defense of its intent to offer evidence of three previous assaults and two incidents of domestic assault committed by Welle. The defense opposed the State's notice, and provided notice of its intent to raise a self-defense claim. After a hearing on the motion, the trial court granted the State's motion as to the three assaults, but denied the motion as to the two domestic assaults. The court explained that evidence of the three assaults was admissible to "determin[e] [Welle's] intent" and to respond to Welle's self-defense claim by showing "a modus operandi from prior behavior."

At trial, Welle testified in his own defense. He claimed that, while at the Powerhouse Bar, he danced with one of the three young women whom he had met earlier at the bar. Afterward, Anderson approached him and told him to "leave them girls alone. I'm their father" and "I'm a Vietnam Vet. I kill people." According to Welle, Anderson then grabbed his arm and said he would "destroy" him. Welle testified that he then followed Anderson outside to "make peace." Once outside, Anderson stepped on Welle's right foot and hit him twice, once in the shoulder and once in the rib. Welle threw one punch and knocked Anderson down. Welle also testified that his wife was not present during the altercation, explaining: "I told her to basically lie for me."

As noted, the court allowed the State to admit evidence of three previous assaults that involved Welle. The first incident occurred in 2001 and involved Welle and M.H., a

5

coworker at a restaurant where Welle worked. One night, Welle called M.H. at work and commented that M.H.'s girlfriend was flirting with another individual. In response, M.H. hung up the phone. Welle called back, the two exchanged words, and Welle said that he would be waiting when M.H. got off work. Welle met M.H. outside the restaurant and punched him, causing M.H.'s tooth to go through M.H.'s lip. During the police investigation of this incident, Welle, who had no visible signs of injury, claimed that M.H. pushed him first and that he hit M.H. in self-defense. Welle was criminally charged and ultimately pled guilty to disorderly conduct.

The second incident occurred in 2003 and involved A.R., Welle's neighbor. As A.R. and Welle were in the living room at Welle's residence, an argument ensued, and Welle shoved A.R. against the couch. A.R. grabbed an empty beer bottle and Welle grabbed a kitchen knife. After a tussle in the living room, Welle punched A.R. in the face. Following the altercation, Welle claimed that he had acted in self-defense because A.R. had threatened to kill Welle's family and hit him with the beer bottle. According to the detective assigned to the case, Welle showed no visible signs of injury. Welle eventually pled guilty to gross misdemeanor assault.

The third incident took place in 2002 and involved D.L., a mechanic who was living in Welle's mother's home. One evening, Welle asked D.L. to change the oil in his car. After D.L. refused, Welle punched him, breaking D.L.'s eye-socket. Welle initially denied assaulting D.L., but later admitted that he punched D.L. because D.L. had made a disparaging remark. Welle did not claim self-defense in this instance and pled guilty to third-degree assault.

In admitting evidence of the three assaults, the trial court explained that there were "indisputable" similarities between the three incidents and the charged offense. The jury subsequently found Welle guilty of both unintentional second-degree felony murder and first-degree manslaughter. In his appeal to the court of appeals, Welle claimed, among other things, that the admission of evidence relating to the three previous assaults constituted impermissible character evidence. In a published decision, the court of appeals reversed and remanded for a new trial. *See State v. Welle*, 847 N.W.2d 52 (Minn. App. 2014). The court of appeals concluded that the district court abused its discretion because "that evidence did not tend to disprove the elements of self-defense and it unfairly prejudiced the defense." *Id.* at 55.

## I.

The issue before us is whether Welle's pattern of asserting self-defense after being the aggressor in an altercation is relevant for purposes of disproving the elements of self-defense. The State sought to introduce evidence, through the admission of evidence of Welle's prior bad acts, that Welle has a pattern of shifting blame and falsely asserting self-defense after being the aggressor in an altercation. We have referred to this type of evidence as *Spreigl* evidence,[2] which is inadmissible to prove a defendant's bad character, but may be admitted for other purposes, such as to show motive, intent, absence of mistake, identity, or a common scheme or plan. Minn. R. Evid. 404(b). Such evidence cannot be admitted unless:

---

[2]    *See State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965).

(1) the prosecutor gives notice of its intent to admit the evidence consistent with the rules of criminal procedure; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

*Id.*

We first address the issue of whether the evidence of other crimes, wrongs, or acts introduced by the State was relevant. As the court of appeals noted, the State offered the evidence of other crimes, wrongs, or acts not to establish that Welle struck Anderson, but to establish a modus operandi and to counter Welle's self-defense claim. The court of appeals then emphasized that after the defense had met its initial burden of producing evidence to support Welle's self-defense claim, the burden shifted to the State to disprove the elements of self-defense beyond a reasonable doubt. After listing the elements of self-defense—(1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief of danger of death or great bodily harm; (3) reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat—the court of appeals summarily concluded that the "proffered *Spreigl* evidence was not relevant to the issue of self-defense." *Welle*, 847 N.W.2d at 59. We disagree.

In *State v. Robinson*, we concluded that evidence of other crimes, wrongs, or acts offered to establish a modus operandi of asserting self-defense was relevant. 427 N.W.2d 217, 227 (Minn. 1988). In *Robinson*, the defendant stabbed the victim, but claimed that he did so in self-defense. *Id.* at 221-22. At Robinson's trial, the trial court permitted the State to offer evidence that Robinson had previously stabbed another man and claimed

8

that he did so in self-defense. *Id.* at 227. On Robinson's appeal, we held that the trial court did not abuse its discretion because "the evidence shows a pattern of operation." *Id.* Here, evidence of Welle's pattern of shifting blame and falsely asserting self-defense after being the aggressor in an altercation is relevant to at least one of the self-defense elements.[3] *See* Minn. R. Evid. 401 (defining relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable"). More specifically, Welle's past conduct had a tendency to make more or less probable the fact that Welle had an actual and honest belief of danger of death or great bodily harm. Therefore, we conclude that evidence of Welle's pattern of shifting blame and falsely asserting self-defense is relevant to one or more of the elements of Welle's self-defense claim.

## II.

The remaining issue is whether the trial court committed reversible error when it admitted the previous incidents of assault. That is to say, was the *Spreigl* evidence admitted for any proper purpose and was its probative value outweighed by its potential for unfair prejudice? *See* Minn. R. Evid. 404(b). We review a trial court's decision to admit evidence of other crimes, wrongs, or acts for an abuse of discretion. *State v. Blom,*

---

[3] We agree that Welle's past assaultive behavior was not relevant to the issue of whether Welle's actions in this case constituted an assault. However, the State did not offer the three previous assaults to prove that Welle assaulted Anderson. Instead, the State offered the evidence to disprove Welle's self-defense claim. Thus, the court of appeals, by focusing only on Welle's "pattern of overreacting to perceived slights," *Welle,* 847 N.W.2d at 59, failed to analyze whether Welle had a past pattern of shifting blame and falsely asserting self-defense that was relevant to disproving at least one of the elements of self-defense.

682 N.W.2d 578, 611 (Minn. 2004) (citing *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998)).

Here, the trial court determined that the previous incidents were "markedly similar" to the charged offense such that they established a common scheme or plan. "[I]n determining whether a bad act is admissible under the common scheme or plan exception, it must have a marked similarity in modus operandi to the charged offense." *State v. Ness*, 707 N.W.2d 676, 688 (Minn. 2006). The State contends that the three previous assaults were "markedly similar" to the charged offense in this case. The State particularly relies on the trial court's finding, which explained:

> The similarities between the three non-domestic convictions is that Defendant, either unprovoked or provoked by words taken to be slights, assaulted the victim and then falsely claimed the assault to be in self-defense or placed blame on his victim. The prosecution characterizes this behavior as a pattern displaying "a *modus operandi* of intractable vengeance." They strongly relate to the current situation, because Defendant once again assaulted an individual and claimed it to be in self-defense. The correlation between these events is indisputable . . . .

Welle responds that the trial court abused its discretion because the evidence was "not markedly similar to the charged offense and, therefore, not relevant and material as common-scheme-or-plan evidence."

We begin by examining the 2001 incident in which Welle punched M.H. outside of a restaurant, causing M.H.'s tooth to go through M.H.'s lip. Having reviewed the record in this case, we conclude that Welle's conduct in the 2001 incident is markedly similar to the charged offense because both incidents involved: (1) Welle initiating contact with a punch to the individual's head; (2) acts that were preceded by some verbal

10

disagreement; (3) a disagreement of minor significance; (4) Welle claiming that he acted in self-defense; and (5) Welle showing no visible signs of injury from the altercation.

Nevertheless, even if relevant, the probative value of other crimes, wrongs, or acts evidence must not be outweighed by its potential for unfair prejudice. *State v. Clark,* 738 N.W.2d 316, 347 (Minn. 2007). We have said that "prejudice" "does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *State v. Cermak,* 365 N.W.2d 243, 247 n.2 (Minn. 1985) (citation omitted) (internal quotation marks omitted). Welle argues that the probative value of the evidence relating to the 2001 incident was outweighed by its potential for unfair prejudice because the evidence showed a general propensity or disposition to commit the type of crime involved. We disagree. The trial court appears to have carefully weighed the potential for unfair prejudice against the probative value of the evidence. Moreover, at every juncture before evidence of the 2001 incident was admitted and during the final jury instructions, the trial court instructed the jury on how to treat the evidence. We presume that the jury followed these cautionary instructions. *See State v. James,* 520 N.W.2d 399, 405 (Minn. 1994). Thus, we conclude that the trial court did not abuse its discretion in admitting evidence of the 2001 incident.

We next consider the 2003 incident involving Welle and A.R., Welle's neighbor. For the same reasons discussed above, we conclude that Welle's conduct in the 2003 incident is markedly similar to the charged offense. Here, both incidents involved: (1) Welle punching the individual's head; (2) acts that were preceded by some verbal

11

disagreement; (3) a disagreement of minor significance; (4) Welle claiming that he acted in self-defense; and (5) Welle showing no visible signs of injury from the altercation. Similarly, we conclude that the probative value of the evidence is not outweighed by its potential for unfair prejudice. Therefore, we also conclude that the trial court did not abuse its discretion in admitting this evidence.

Finally, we consider the 2002 incident between Welle and D.L., the mechanic who was living in Welle's mother's home. Here, unlike the 2001 and 2003 incidents, the 2002 incident did not involve Welle asserting a self-defense claim. Absent the assertion of a self-defense claim by Welle, we fail to see how the 2002 incident is relevant to Welle's assertion of self-defense in this case. Thus, we conclude that the admission of evidence of the 2002 incident was erroneous.

We will nonetheless affirm the trial court unless Welle can establish that he was prejudiced by the erroneous admission of the evidence. *See State v. Bolte,* 530 N.W.2d 191, 198 (Minn. 1995). "[O]ur role is to examine the entire trial record and determine whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict . . . ." *Id.* (citation omitted) (internal quotation marks omitted). Several factors support a conclusion that, in this case, there was no reasonable possibility that the admission of evidence relating to the 2002 incident significantly affected the jury's finding that Welle was not acting in self-defense. First, and most importantly, the 2001 and 2003 incidents were both properly admitted as evidence, which reduced the impact of the admission of the 2002 incident. Second, witness testimony at Welle's trial established that on the night of the altercation Welle and Anderson argued,

12

and Welle stated: "You don't threaten me. Nobody threatens me. Outside now." Third, Welle admitted that he asked his wife to lie for him, say that she witnessed the altercation, and say that she saw Welle punch Anderson in self-defense. Fourth, Welle acknowledged to police that Anderson told him: "You better stop it now or I'm going to take you outside and destroy you." To this statement, Welle responded: "Show me the way." Therefore, based on the record in this case, we conclude that the erroneous admission of the 2002 incident was harmless.

For the foregoing reasons, we reverse and remand to the court of appeals for consideration of Welle's remaining arguments.

Reversed and remanded.