*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0590**

State of Minnesota,
Respondent,

vs.

Matthew Robert Dornsbach,
Appellant.

**Filed February 29, 2016**
**Affirmed**
**Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-13-16020

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his assault convictions and sentence, arguing that the district court abused its discretion by admitting *Spreigl* evidence and refusing to grant a dispositional departure. Appellant also makes pro se arguments. We affirm.

**FACTS**

From about 8:00 p.m. on May 16, 2013, until the early morning hours of May 17, appellant Matthew Robert Dornsbach and his adult daughter, B.D., drank alcoholic beverages and mingled at a Richfield bar. Just before 2:00 a.m. on May 17, Dornsbach and B.D. exited the bar, and B.D. engaged in a verbal and physical fight with another woman, J.B.-P. As J.B.-P.'s father, A.P., attempted to intervene in the fight, Dornsbach punched A.P. in the face or head and knocked him to the ground. When another person, J.S., also attempted to intervene in the fight, Dornsbach punched J.S. in the face or head, knocked J.S. to the ground, and kicked him about the head.

Police apprehended Dornsbach as he was walking away from the scene. In a statement to police, Dornsbach admitted that he had punched A.P. and that A.P. "had not punched or swung at him before that." Dornsbach also admitted that he had punched J.S. and "kicked him in the face" while J.S. was on the ground. A.P. was taken by ambulance to an area hospital, where he was treated for injuries including a concussion, bleeding in his brain, lacerations to his head and mouth, and broken teeth. J.S. also received hospital treatment for injuries including head trauma and a broken jaw.

2

Respondent State of Minnesota charged Dornsbach with first-degree assault (great bodily harm) in connection with A.P. and J.S. and third-degree assault (substantial bodily harm) in connection with J.S. Dornsbach gave notice of a defense of self-defense, and the state gave notice of intent to introduce *Spreigl* evidence. Prior to opening statements at Dornsbach's jury trial, the district court ruled that the state could introduce *Spreigl* evidence of Dornsbach's April 2013 commission of obstructing legal process. In addition to the *Spreigl* evidence, the state offered testimony from various witnesses including A.P., J.S., and J.B.-P. and exhibits including surveillance footage from the bar. Dornsbach testified in his own defense. He admitted that he had punched A.P. and had punched and kicked J.S. but claimed that he did so in self-defense. The jury found Dornsbach guilty of first-degree assault of A.P. and third-degree assault of J.S. The jury acquitted Dornsbach of first-degree assault of J.S.

Dornsbach sought a dispositional departure from the presumptive sentence of 86 months' imprisonment, asking the district court to sentence him to up to 116 months' probation. The court rejected Dornsbach's request and sentenced him to 74 months' imprisonment for first-degree assault (at the bottom of the presumptive sentencing range) and to 18 months' concurrent imprisonment, stayed for 3 years, for third-degree assault.

This appeal follows.

## DECISION

Spreigl *evidence*

Evidence of a defendant's prior bad acts, often called *Spreigl* evidence, "is inadmissible to prove a defendant's bad character, but may be admitted for other purposes,

3

such as to show motive, intent, absence of mistake, identity, or a common scheme or plan."

*State v. Welle*, 870 N.W.2d 360, 364 (Minn. 2015) (citing Minn. R. Evid. 404(b)).

> [*Spreigl*] evidence shall not be admitted unless (1) the prosecutor gives notice of its intent to admit the evidence consistent with the rules of criminal procedure; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

Minn. R. Evid. 404(b). "In assessing the probative value, a court must identify the precise disputed fact to which the *Spreigl* evidence would be relevant." *State v. Ferguson*, 804 N.W.2d 586, 598 (Minn. 2011) (quotation omitted).

"[Appellate courts] review the admission of *Spreigl* evidence for an abuse of discretion." *State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007) (footnote omitted). Specifically, "[appellate courts] review whether the rationale *cited by the district court* provides a proper basis upon which to admit the evidence." *State v. Rossberg*, 851 N.W.2d 609, 615–16 (Minn. 2014) (quotation omitted). "The appellant challenging the admission of *Spreigl* evidence bears the burden of showing the error and any resulting prejudice." *Clark*, 738 N.W.2d at 345.

"The erroneous admission of *Spreigl* evidence is harmless unless it substantially influenced the verdict." *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015). "In determining whether the erroneous admission of *Spreigl* evidence substantially influenced the verdict, [appellate courts] consider several factors, including whether the trial court provided the jurors a cautionary instruction and whether the evidence was central to the

State's case." *Id.* "Other relevant considerations are whether the State dwelled on the evidence in closing argument and whether the evidence of guilt was overwhelming." *State v. Riddley*, 776 N.W.2d 419, 428 (Minn. 2009).

In this case, the district court allowed the state to introduce *Spreigl* evidence of Dornsbach's April 2013 commission of obstructing legal process. The *Spreigl* evidence showed that Dornsbach and B.D. were intoxicated at a Bloomington house party and became "verbally confrontive [sic] with both the homeowner and additional parties as well as law enforcement," who had been called to the house. Shortly after 2:00 a.m., police escorted Dornsbach and B.D. outside; "[B.D.] continued to yell and shout as she was outside," using profanity and making general threats. Police warned B.D. that she would be arrested for disorderly conduct if she persisted in her behavior, and B.D. responded by "belch[ing] in [an] officer's face" and cursing at the officer. As an officer placed B.D. under arrest, B.D. "began yelling for [Dornsbach]." Dornsbach approached and "started stepping in between the officers and the squad car to stop [police] from arresting [B.D.] and bring[ing] her to the squad." Police warned Dornsbach to step back, and an officer "grabbed [Dornsbach's] arm and tried moving him away so the officers could get to the squad car." Dornsbach turned around and went "chest to chest" with the officer, bumping the officer's body with his own. The officer then took Dornsbach to the ground and, "[w]ith the assistance of a couple other officers, [Dornsbach] was detained."

In ruling that the above-described *Spreigl* evidence was admissible, the district court stated:

5

Based on th[e] information [regarding Dornsbach's April 2013 commission of obstructing legal process] in a case where there is a defense of self-defense and an issue of the defendant's intent, the Court will admit that for purposes of showing the defendant's reaction when his daughter was involved and what his reaction was to that circumstance, which is similar to this case in that the defendant reacted to a situation that involved his daughter.

Therefore, I think it's relevant and helpful to the jury in evaluating that and the probative value is not outweighed for its potential for prejudice, particularly when I'll give a limiting instruction.

Dornsbach argues that "[w]hen [he] admitted he hit [J.S.] and [A.P.], intent was . . . no longer a disputed issue" and that "[t]he only disputed issue in [his] case was whether he acted in self-defense." He further argues that the *Spreigl* evidence was not relevant to the self-defense issue.

We look to supreme court caselaw for guidance. In *Welle*, the supreme court considered the admission, at a trial on homicide charges, of *Spreigl* evidence regarding three prior assaults involving the defendant. 870 N.W.2d at 361, 363. In that case, the defendant had claimed self-defense in two of the three prior assaults, and the defendant asserted self-defense against the homicide charges. *Id.* at 363. The court concluded that "[the defendant]'s pattern of shifting blame and falsely asserting self-defense is relevant to one or more of the elements of [his] self-defense claim." *Id.* at 365. But as to the prior assault in which the defendant had not claimed self-defense, the court stated:

[U]nlike the 2001 and 2003 incidents, the 2002 incident did not involve [the defendant] asserting a self-defense claim. *Absent the assertion of a self-defense claim by [the defendant], we fail to see how the 2002 incident is relevant to [the defendant]'s*

6

*assertion of self-defense in this case.* Thus, we conclude that the admission of evidence of the 2002 incident was erroneous.

*Id.* at 366 (emphasis added).

Similarly here, Dornsbach never made a claim of self-defense in connection with his April 2013 commission of obstructing legal process. Assuming without deciding that the district court abused its discretion in admitting *Spreigl* evidence regarding the incident, we conclude that Dornsbach has failed to establish that he was prejudiced by the admission. As in *Welle*, "[s]everal factors support a conclusion that, in this case, there was no reasonable possibility that the admission of [*Spreigl*] evidence . . . significantly affected the jury's finding that [the defendant] was not acting in self-defense." *Id.* at 366–67.

First, before the state introduced the *Spreigl* evidence, the district court instructed the jury as follows:

> Ladies and gentlemen, remember earlier I told you that sometimes evidence is admitted again for a limited purpose. The testimony you're about to hear is going to be introduced by the State with respect to occurrences that occurred on or about April the 21st of 2013, in Bloomington Minnesota.
>
> The evidence that you will hear is being offered for the limited purpose of assisting you in determining whether the defendant committed those acts with which the defendant is charged in this case.
>
> The evidence is not to be used to prove the character of the defendant or that defendant acted in conformity with such character.
>
> The defendant is not being tried for and may not be convicted of any offenses other than the charged offenses. You are not to convict the defendant based on the occurrences on April the 21st, 2013, in Bloomington, Minnesota. To do so might result in unjust double punishment.

7

The court gave a nearly identical instruction following the close of evidence. The jury is presumed to have followed these instructions. *See Campbell*, 861 N.W.2d at 103 ("The trial court gave two limiting instructions regarding th[e] *Spreigl* evidence . . . . We presume that the jury followed these instructions."). Second, the state did not even allude to the *Spreigl* evidence in its closing argument. This indicates that the evidence was not central to the State's case and establishes that the evidence was not dwelled on in closing. Third, the state dismantled Dornsbach's self-defense claim by eliciting and highlighting on cross-examination of Dornsbach the many substantive inconsistencies between his self-serving trial testimony and his prior statement to police. The state's effective cross-examination of Dornsbach, coupled with eyewitness and victim testimony and surveillance footage negating any basis for self-defense, shows that the evidence of guilt was overwhelming.

In sum, no reasonable possibility exists that the *Spreigl* evidence significantly affected the verdicts against Dornsbach. Consequently, any error in its admission does not warrant reversal of Dornsbach's convictions.

*Dispositional departure*

Dornsbach argues that the district court erred by denying his request for a dispositional departure. "[Appellate courts] afford the trial court great discretion in the imposition of sentences and reverse sentencing decisions only for an abuse of that discretion." *State v. Soto*, 855 N.W.2d 303, 307–08 (Minn. 2014) (quotation omitted). "The

Minnesota Sentencing Guidelines, however, limit the sentencing court's discretion by prescribing a sentence or range of sentences that is presumed to be appropriate." *Id.* at 308 (quotation omitted).

> A sentencing court must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances that distinguish a case and overcome the presumption in favor of the guidelines sentence. Accordingly, a sentencing court can exercise its discretion to depart from the guidelines only if aggravating or mitigating circumstances are present and those circumstances provide a substantial and compelling reason not to impose a guidelines sentence.

*Id.* (emphasis omitted) (quotations and citations omitted).

"A defendant's particular amenability to probation justifies a district court's decision to stay the execution of a presumptively executed sentence." *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006); *see also Soto*, 855 N.W.2d at 308–09 (stating that "[the supreme court's] consistent use of the words 'particular' and 'particularly' in this context is not accidental" and emphasizing that mere amenability to probation, as opposed to particular amenability to probation, cannot justify dispositional departure). Dornsbach argues that "[he] established that he was particularly amenable to probation" by showing that "[h]e had a minimal criminal record, he was remorseful for the harm he caused the victims of the offense, he attended all scheduled court appearances, was polite throughout the trial process and he had significant family support." He also argues that "[t]he [district] court did not carefully consider these factors when it summarily denied his motion."

But the record shows that, before denying Dornsbach's request for a dispositional departure, the district court heard argument from both parties, victim-impact statements

9

from A.P. and J.S., and a statement by Dornsbach himself. The district court also acknowledged its receipt and review of three letters submitted on Dornsbach's behalf. The court stated:

> Taking into account the arguments and presentations that I have heard, with respect to [Dornsbach's conviction of first-degree assault], the guidelines call for a sentence of no less than 74 months and no more than 103 months with a presumptive sentence of 86 months as advocated by the state. For me to go below that I need to have substantial and compelling reasons, and the only reason offered is that the probation officer indicated back in a pre-plea investigation from July of—I think 2013 that there was some amenability to probation. But the way the law reads is that it needs to be particularly amenable, more than the average defendant who might appear in front of this Court, and I can't find that on this record.

The record reflects that, before denying Dornsbach's request for departure, the court considered whether Dornsbach was particularly amenable to probation, correctly identified the applicable legal standard, and carefully applied that standard to Dornsbach's departure request.

"[Appellate courts] will not ordinarily interfere with a sentence falling within the presumptive sentence range, either dispositionally or durationally, even if there are grounds that would justify departure." *Bertsch*, 707 N.W.2d at 668 (quotation omitted). Indeed, "[the supreme court] ha[s] emphasized that 'it would be a rare case which would warrant reversal of the refusal to depart.'" *Id.* (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981)); *see also State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013) (stating that "[w]e will affirm the imposition of a presumptive guidelines sentence when the record shows that the sentencing court carefully evaluated all the testimony and information

10

presented before making a determination" and that "[o]nly the rare case will merit reversal based on the district court's refusal to depart" from presumptive guidelines sentence (quotations omitted)), *review denied* (Minn. Sept. 17, 2013). This is no such rare case. We will not disturb the court's exercise of its discretion. *See State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999) ("We afford the trial court great discretion in the imposition of sentences and we cannot simply substitute our judgment for that of the trial court.").

*Pro se arguments*

In a pro se supplemental brief, Dornsbach complains about his trial counsel because counsel did not call "character witnesses or nothing," and he complains of other purported errors at trial and sentencing, including (1) incomplete impeachment of A.P. and J.S., (2) the jury's "corrupt[ion]" by the foreperson, (3) the state's reference at sentencing to Dornsbach's 1992 third-degree assault conviction, (4) "lie[s]" in J.S.'s victim-impact statement, (5) lack of sentencing input by Dornsbach's "current probation officer," and (6) the district court's failure to "either read or ma[k]e note of" letters written on Dornsbach's behalf. And he also suggests that the evidence was insufficient to support his conviction of first-degree assault. But Dornsbach's pro se brief wholly lacks reasoned argument and citation to the record or to legal authority. We therefore decline to consider Dornsbach's pro se arguments. *See State v. Taylor*, 869 N.W.2d 1, 22 (Minn. 2015) ("We deem arguments waived on appeal if a pro se supplemental brief contains no argument or citation to legal authority in support of the allegations." (quotation omitted)).

**Affirmed.**