*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1240**

State of Minnesota,
Respondent,

vs.

Jeffray Leallen Walker,
Appellant.

**Filed July 5, 2016
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CR-14-7764

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; Melissa Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Jeffray Leallen Walker and three other men conducted a violent, nighttime home invasion during which they robbed and assaulted a family of four at gunpoint. A Ramsey

County jury found Walker guilty of 15 counts of burglary, criminal sexual conduct, robbery, kidnapping, and unlawful possession of a firearm. The district court sentenced him to 360 months of imprisonment. We conclude that the district court did not err by admitting *Spreigl* evidence and, therefore, affirm.

## FACTS

In 2014, A.S. and J.S. lived with their two children, a 13-year-old boy and a 2-year-old girl, in a two-story home in St. Paul. During that year, they twice experienced a nighttime home invasion.

The first home invasion occurred in the early morning hours of May 6, 2014. At approximately 2:00 a.m., as J.S. returned home from grocery shopping, three men attacked him, pistol-whipped him, and dragged him inside his home. The intruders demanded money; J.S. gave them the money in his pockets and gave them his cell phone. While J.S. was held at gunpoint, one of the intruders went into a first-floor bedroom, where A.S. was sleeping. The intruder, who was armed, ordered A.S. to get out of bed and to expose her breasts. The intruder brought A.S. to the living room, where another intruder held A.S. and J.S. at gunpoint while other intruders searched the house. At the time, neither J.S. nor A.S. recognized any of the intruders. An investigation followed, but no charges were filed.

The second home invasion occurred in the early morning hours of October 8, 2014. A.S. was sleeping in a first-floor bedroom, and J.S. was sleeping on a couch in the living room. Four men, later identified as Walker, Sebastian Jackson, Jonathan Lira-Solis, and Jose Dominguez, entered the home through a basement window and confronted J.S. in the living room, demanding money and drugs. At least two of the intruders were armed. After

2

taking the money in J.S.'s pockets and his cell phone, the intruders punched J.S., kicked him, pistol-whipped him, threw hot wax on him, stabbed his legs with kitchen knives, and Tased him.

Two of the intruders, later identified as Walker and Jackson, went into the first-floor bedroom where A.S. had been sleeping. Walker, who was armed, wore a red mask and a black hooded sweatshirt. Jackson left the room at Walker's request. Walker turned on the light and locked the door. Walker pointed his pistol at A.S. and ordered her to expose her breasts. He also said, "Suck my dick." A.S. complied with Walker's demand until Jackson knocked on the door. Walker opened the door and ordered A.S. to crawl to the living room. In the living room, she saw other intruders assault J.S. The intruders threatened to kill someone if J.S. or A.S. called the police. One of the intruders brought the two-year-old girl downstairs to the living room. One of the intruders threatened to kill the girl if A.S. did not stop her crying. The intruders also brought the 13-year-old boy into the living room, made him lie on the floor, kicked him, and pointed a gun at him. The intruders told A.S. to take the girl to the first-floor bedroom. A.S. locked the door to the bedroom, barricaded the door with her dresser, opened her bedroom window, and screamed for help. Jackson kicked in the door, closed the window, and fired his pistol at the dresser. Walker entered the room and fired two gunshots into the ceiling. At some point, A.S. saw Walker without a mask on.

The intruders left the house, taking with them many items, including consumer electronics, a firearm, and cell phones. After the intruders left, A.S. called 911. A.S. told the 911 dispatcher that the same men had done the same thing to them in May. J.S. told

3

two police officers that one of the intruders was Walker, whom J.S. recognized, despite the mask, because they had grown up in the same neighborhood. Later that morning, A.S. had a sexual-assault examination during which her mouth and hands were swabbed. DNA testing was inconclusive.

In October 2014, the state charged Walker with seven offenses: (1) first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(c) (2014); (2) first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(d); (3) aiding and abetting first-degree burglary with a dangerous weapon, in violation of Minn. Stat. §§ 609.05, subd. 1, 609.582, subd. 1(b) (2014); (4) aiding and abetting first-degree burglary (based on the assault of J.S.), in violation of Minn. Stat. §§ 609.05, subd. 1, 609.582, subd. 1(c); (5) aiding and abetting first-degree burglary (based on the assault of the 13-year-old boy), in violation of Minn. Stat. §§ 609.05, subd. 1, 609.582, subd. 1(c); (6) aiding and abetting first-degree aggravated robbery of A.S., in violation of Minn. Stat. §§ 609.05, subd. 1, 609.245, subd. 1 (2014); and (7) aiding and abetting first-degree aggravated robbery of J.S., in violation of Minn. Stat. §§ 609.05, subd. 1, 609.245, subd. 1.

The state later amended the complaint to allege eight additional offenses: (8) a second count of aiding and abetting first-degree aggravated robbery of J.S., in violation of Minn. Stat. §§ 609.05, subd. 1, 609.245, subd. 1, (9) aiding and abetting first-degree aggravated robbery of the 13-year-old boy, in violation of Minn. Stat. §§ 609.05, subd. 1, 609.245, subd. 1; (10) a second count of aiding and abetting first-degree aggravated robbery of the 13-year-old boy, in violation of Minn. Stat. §§ 609.05, subd. 1, 609.245, subd. 1; (11) possession of a firearm by an ineligible person, in violation of Minn. Stat.

§ 624.713, subd. 1(2) (2014); (12) aiding and abetting kidnapping of A.S., in violation of Minn. Stat. §§ 609.05, subd. 1, 609.25, subd. 1(2) (2014); (13) aiding and abetting kidnapping of J.S., in violation of Minn. Stat. §§ 609.05, subd. 1, 609.25, subd. 1(2); (14) aiding and abetting kidnapping of the 13-year-old boy, in violation of Minn. Stat. §§ 609.05, subd. 1, 609.25, subd. 1(2); and (15) aiding and abetting kidnapping of the two-year-old girl, in violation of Minn. Stat. §§ 609.05, subd. 1, 609.25, subd. 1(2).

In January 2015, the state gave notice of its intent to offer *Spreigl* evidence concerning four incidents of prior bad acts, including the first home invasion. The state later revised its notice by limiting its *Spreigl* evidence to the first home invasion. In February 2015, Walker moved to suppress the evidence of the first home invasion. At a pretrial hearing, the state submitted a packet of exhibits that includes, among other things, numerous police reports relating to both the first and second home invasions, which in turn include statements given by A.S., J.S., and Jackson. The packet also includes a transcript of Jackson's plea hearing, in which he admitted that he was in A.S.'s and J.S.'s home with Walker during the first home invasion. The district court denied Walker's motion to suppress evidence of the first home invasion. The district court found that the evidence was offered to prove Walker's identity and a common scheme, that the state established by clear and convincing evidence that the evidence is true, and that the potential for unfair prejudice "was significantly less than the probative value of the evidence." The district court proposed a cautionary instruction concerning the *Spreigl* evidence, to which neither party objected.

At trial in February 2015, the state called 16 witnesses, including A.S., J.S., and their 13-year-old son. A.S. testified that she had seen at least one intruder's face during the first home invasion. She testified that, during the second home invasion, she recognized the voice of the man wearing the red mask who ordered her to expose her breasts and forced her to engage in fellatio as the same man who ordered her to expose her breasts during the first home invasion. J.S. testified that he recognized Walker during the second home invasion because they previously lived in the same neighborhood and because Walker got very close to his face during the incident. J.S. also testified that one of the intruders said, "We got you again. We were the ones that hit you before."

Jackson testified for the state pursuant to a plea agreement. He provided details about the second home invasion, including the logistics of entering the home, the threats and violent acts, and the items stolen. In particular, he testified that Walker told him to leave him alone with A.S. in her bedroom. Jackson testified that, after he knocked on the door, A.S. crawled out of the bedroom, followed by Walker.

Sergeant Sheila Lambie testified about her investigation of the second home invasion, including her interview of A.S. Sergeant Lambie testified that A.S. identified Walker's photograph in a photo array as the man who told her to expose her breasts during the first home invasion and the man who sexually assaulted her during the second home invasion. Sergeant Lambie also testified about her pre-trial interview of Walker. She testified that Walker admitted to participating in the second home invasion with Jackson, Lira-Solis, and Dominguez, and admitted to possessing several firearms, including a pistol, and shooting twice into the bedroom ceiling. Walker also admitted to Sergeant Lambie

6

that he wore a red mask and was the only intruder wearing a mask. Walker denied to Sergeant Lambie that he sexually assaulted A.S. and stated that Lira-Solis was the intruder who entered her bedroom and sexually assaulted her. Sergeant Lambie's interview was audio-recorded, and several excerpts were played during trial, and the jury also was given a written transcript of those excerpts.

Walker did not offer any evidence. The jury found Walker guilty on all counts. In May 2015, the district court imposed a sentence of 360 months of imprisonment on count 1 and imposed lesser, concurrent sentences on counts 4, 6, 11, 12, 13, 14, and 15. Walker appeals.

## D E C I S I O N

Walker argues that the district court erred by admitting evidence of the first home invasion as *Spreigl* evidence. Walker's argument has two main parts. First, he argues that the state did not prove the truthfulness of its *Spreigl* evidence by clear and convincing evidence. Second, he argues that the probative value of the state's *Spreigl* evidence is outweighed by its potential for unfair prejudice.

Walker's argument is governed by a rule of evidence that states, in relevant part:

> Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In a criminal prosecution, such evidence shall not be admitted unless . . . the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence . . . .

7

Minn. R. Evid. 404(b). Evidence of other crimes or bad acts also may be admissible to prove a common scheme. *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998). Evidence of other crimes or bad acts is known in Minnesota as "*Spreigl* evidence." *Id.* (citing *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965)). A district court must apply a five-part test to determine whether *Spreigl* evidence is admissible:

> (1) the prosecutor gives notice of its intent to admit the evidence consistent with the Rules of Criminal Procedure; (2) the prosecutor clearly indicates what the evidence will be offered to prove; (3) the other crime, wrong, or act and the participation in it by a relevant person are proven by clear and convincing evidence; (4) the evidence is relevant to the prosecutor's case; and (5) the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant.

Minn. R. Evid. 404(b); *see also State v. Ness*, 707 N.W.2d 676, 686 (Minn. 2006). This court applies an abuse-of-discretion standard of review to a district court's admission of *Spreigl* evidence. *State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007).

In this case, there is no dispute that the state gave notice of its intent to offer *Spreigl* evidence and that the evidence is relevant to Walker's identity and to the existence of a common scheme. Walker challenges the admission of the state's *Spreigl* evidence under the third and fifth parts of the five-part test.

**A.**

Walker first argues that the district court erred by finding that the state proved the truthfulness of its evidence of the first home invasion by clear and convincing evidence. A defendant's prior bad acts are proved by clear and convincing evidence if it is "highly probable that the facts sought to be admitted are truthful." *Ness*, 707 N.W.2d at 686. The

8

uncorroborated testimony of a single witness may be sufficient to satisfy the clear-and-convincing standard. *Kennedy*, 585 N.W.2d at 389.

The district court found that the evidence concerning the first home invasion was proved by clear and convincing evidence. In making that finding, the district court relied on police reports of both the first home invasion and the second home invasion, a statement A.S. made to police immediately following the second home invasion, statements Jackson made during his plea hearing, and statements Jackson made when interviewed by a police officer.

Walker contends that the district court's finding is flawed because it is based in part on A.S.'s identification of him during the second home invasion, which is the conduct for which he was charged. Specifically, Walker contends, "A defendant's presumption of innocence is compromised if courts permit the state to prove a prior bad act incident with evidence of the very offense the prior incident is offered to prove." Walker does not cite any authority in support of this contention. In the circumstances of this case, A.S.'s statement to a police officer that Walker participated in the first home invasion is explained by the fact that it was not until the second home invasion that she recognized Walker, by both his voice and his face. A.S.'s statement to a police officer is not an improper basis for the district court's clear-and-convincing finding merely because her statement is based in part on her observations during the second home invasion. Furthermore, the district court's clear-and-convincing finding also is based on Jackson's pre-trial statement to a police officer and his admission at his plea hearing that he and Walker were at A.S.'s and J.S.'s home during the first home invasion. Walker does not contend that Jackson's

9

statements cannot be relied on for purposes of the district court's *Spreigl* analysis. Jackson's statements, which corroborate A.S.'s statements, would be sufficient by themselves to prove Walker's involvement in the first home invasion by clear and convincing evidence.

Thus, the district court did not err by finding that the state proved the truthfulness of its *Spreigl* evidence by clear and convincing evidence.

**B.**

Walker also argues that the district court erred by determining that the probative value of the state's *Spreigl* evidence outweighs its potential for unfair prejudice.

*Spreigl* evidence is admissible only if "the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant." Minn. R. Evid. 404(b). Evidence may give rise to "unfair prejudice" if the evidence "lure[s] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *State v. Smith*, 749 N.W.2d 88, 95 (Minn. App. 2008) (quotation omitted). "*Spreigl* evidence may be relevant and material to show the identity of the perpetrator if identity is at issue and if there is a sufficient 'time, place, or modus operandi nexus' between the charged offense and the *Spreigl* offense." *State v. Wright*, 719 N.W.2d 910, 917 (Minn. 2006) (quoting *State v. Blom*, 682 N.W.2d 578, 612 (Minn. 2004)). If identity is at issue, *Spreigl* evidence is "admissible only if the trial court finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the state's burden of proof." *State v. Lynch*, 590 N.W.2d 75, 81 (Minn. 1999) (quotation

omitted). *Spreigl* evidence has probative value if it has a sufficiently close relationship to the charged offense. *Kennedy*, 585 N.W.2d at 390.

In this case, the state's *Spreigl* evidence has a very close relationship to the charged offense. The district court noted that, in both the first and the second home invasions, the invaders entered at nighttime, wore masks to conceal their identity, used firearms, pistol-whipped the residents and forced them to lie on the floor, and entered a bedroom and demanded that A.S. expose her breasts. The unusually close similarity between the first home invasion and the second home invasion establishes a high degree of probative value. *See Ness*, 707 N.W.2d at 688; *Blom*, 682 N.W.2d at 612.

Walker nonetheless contends that the potential for undue prejudice outweighs the probative value on the ground that the state did not need the *Spreigl* evidence to prove its case. In weighing probative value and the potential for undue prejudice, a district court may consider the state's need for the evidence. *Ness*, 707 N.W.2d at 690. In this case, the admission of the state's *Spreigl* evidence is justified by the fact that Walker's identity was the central issue at trial. A.S. was not acquainted with Walker, who was masked during most of the second home invasion. Jackson's incriminating testimony was of uncertain value because of attacks on his credibility. The state's forensic evidence of the sexual assault was inconclusive. In closing argument, Walker's trial counsel suggested that Walker simply was not present during either the first or the second home invasion. Because Walker's identity was important and contested, the state's *Spreigl* evidence was necessary to support the state's case. *See State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) (affirming admission of *Spreigl* evidence in part because identity was central issue and other evidence

11

was not dispositive); *Blom*, 682 N.W.2d at 613 (affirming admission of *Spreigl* evidence in part because identity was at issue and physical evidence was lacking).

Walker further contends that the district court erred by not limiting the scope of the state's *Spreigl* evidence. This contention is inconsistent with the record. As the state contends, the *Spreigl* evidence constitutes only 8 of the 87 pages of A.S.'s testimony, only 5 of the 44 pages of J.S.'s testimony, only 2 of the 28 pages of Sergeant Lambie's testimony, and none of Jackson's testimony. Furthermore, the potential for undue prejudice was reduced by the district court's cautionary instruction. *See Kennedy*, 585 N.W.2d at 392 (concluding that cautionary instructions lessened probability of undue prejudice of *Spreigl* evidence).

In sum, the district court did not err by admitting the state's *Spreigl* evidence concerning the first home invasion.

**Affirmed.**