*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0177**

State of Minnesota,
Respondent,

vs.

Larry Ray House,
Appellant.

**Filed December 11, 2023**
**Affirmed**
**Bratvold, Judge**

Cass County District Court
File No. 11-CR-20-170

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Benjamin Lindstrom, Cass County Attorney, Kelsey L. Scanlon, Chief Deputy County
Attorney, Walker, Minnesota (for respondent)

Max A. Keller, Barry S. Edwards, Keller Law Offices, Minneapolis, Minnesota (for
appellant)

Considered and decided by Bratvold, Presiding Judge; Reyes, Judge; and Smith,

Tracy M., Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

In this appeal from a judgment of conviction for criminal sexual conduct, appellant

first argues that this court should reverse his conviction and order a new trial because the

district court abused its discretion by (1) limiting the number of witnesses whom the

defense could call and question about the victim's reputation for dishonesty; (2) excluding evidence of the victim's past sexual conduct under Minn. R. Evid. 412; (3) admitting evidence of other sexual assaults by appellant; (4) excluding six defense witnesses who would have testified that they observed no sexual contact between appellant and the victim, and (5) denying appellant a fair trial due to the cumulative weight of the district court's errors. Appellant also argues that the district court abused its discretion by denying appellant's motion for a downward dispositional departure and imposing a sentence within the range recommended by the Minnesota Sentencing Guidelines. Because we conclude that the district court did not abuse its discretion when making the challenged decisions, we affirm.

**FACTS**

The following facts summarize the evidence received during the jury trial, viewed favorably to the jury's verdict, and include relevant procedural history. Appellant Larry Ray House met M.L. in the fall of 2018, around the time that House's adult son, D.H., married M.L.'s maternal aunt, A.H. Within a few months, M.L., who was 12 years old at the time, started spending time at House's residence, attending church with House and his family, playing video games in one of House's bedrooms, and occasionally staying overnight. When M.L. stayed overnight, he slept in a bedroom or the living room. M.L. also went hunting with House.

M.L. testified that House sexually abused him, beginning in 2018 and continuing until 2020. House kissed his neck, "grabb[ed his] private parts" over his clothing, performed oral sex on him, inserted his finger into M.L.'s anus, and "grind[ed] on top of

2

[M.L.] with his private parts." M.L. testified that House's wife walked into a bedroom and "saw [House] on top of [M.L.], and [House] was biting or kissing [M.L.'s] neck."

When they were alone while hunting, M.L. told House to stop the sexual contact or M.L. "was going to come clean and tell someone about what was happening." M.L. testified that House responded by pointing his gun at M.L. and saying that "he had plenty of land back here to bury [M.L.] in."

M.L. testified that on January 24, 2020, when he was 14 years old, he slept over at the House residence. When House "went to go wake [him] up for school," House "grinded on [M.L.] for a little bit, took off [M.L.'s] clothes," and then removed his own clothes. House performed oral sex on M.L. and attempted to insert his finger into M.L.'s anus. M.L. pulled a blanket on top of himself to stop the contact. House then drove M.L. to school, where M.L. told the school counselor that House was sexually abusing him. The counselor contacted the police.

Respondent State of Minnesota filed a complaint charging House under Minn. Stat. § 609.342, subd. 1(g) (2018), with one count of first-degree criminal sexual conduct against M.L., alleging penetration or sexual contact when M.L. was under 16 years of age and had a significant relationship with House. The state amended the complaint to charge House under Minn. Stat. § 609.342, subd. 1(b) (2018), with one count of first-degree criminal sexual conduct against M.L., alleging penetration or sexual contact when M.L. was aged between 13 and 15 and House was in a position of authority over him.

House's jury trial began on November 1, 2022. Before the jury was seated, the district court ruled from the bench on the parties' motions in limine, which this opinion

discusses in more detail below. M.L. testified as summarized above. House did not testify but offered the testimony of his wife, G.L., and A.H. G.L. is M.L.'s uncle. G.L. and A.H. testified that M.L. had a reputation for dishonesty. House's wife testified that she saw no sexual contact between House and M.L.

The jury found House guilty. Before sentencing, House moved for a downward dispositional departure or, in the alternative, a downward durational departure. The district court denied House's motion and imposed a sentence of 144 months in prison, which was within the range prescribed by the Minnesota Sentencing Guidelines. This appeal follows.

**DECISION**

**I.     The district court did not abuse its discretion by limiting House to two witnesses to testify about M.L.'s reputation for dishonesty.**

House's witness list identified three witnesses whom he intended to call to testify about M.L.'s reputation for dishonesty. Before trial, the state moved to exclude these witnesses. The district court ruled that House could call two witnesses to testify about M.L.'s reputation for dishonesty. The district court reasoned that testimony about M.L.'s truthfulness "is not overly prejudicial . . . and the probative value does outweigh the prejudicial nature, but . . . to allow more than two people to testify to that would be unduly prejudicial." House called M.L.'s aunt, A.H., who testified that M.L. "barely ever tells the truth. He lies a lot." House also called M.L.'s uncle, G.L., who testified that M.L. is "a very dishonest person."

On appeal, House argues that the district court's ruling that limited House to two witnesses to testify about M.L.'s reputation for dishonesty was "arbitrary and capricious

4

and lacking in any legal basis." He contends that the ruling deprived House of his rights to a fair trial, to due process, to present a complete defense, and to confront his accuser. The state argues that the district court did not abuse its discretion because the excluded testimony was repetitive of other evidence.

Criminal defendants have the right to present a defense, which includes calling witnesses to testify. U.S. Const. amends. VI, XIV; Minn. Const. art. 1, § 7. This right, however, is circumscribed by the rules of evidence and procedure. *State v. Greer*, 635 N.W.2d 82, 91 (Minn. 2001). Appellate courts afford deference to district courts' evidentiary rulings. *Id.* "Evidentiary rulings rest within the sound discretion of the district court, and we will not reverse an evidentiary ruling absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). The same standard of review applies when "the defendant claims that the exclusion of evidence deprived him of his constitutional right to a meaningful opportunity to present a complete defense." *State v. Zumberge*, 888 N.W.2d 688, 694 (Minn. 2017).

Under Minn. R. Evid. 608(a)(1), "opinion and reputation" evidence is admissible to show a witness's character for truthfulness or untruthfulness. Under Minn. R. Evid. 403, however, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Thus, while reputation evidence is admissible under Minn. R. Evid. 608, it may be excluded or limited by Minn. R. Evid. 403.

Evidence is unfairly prejudicial under rule 403 when there is an "unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *State v. Mosley*, 853 N.W.2d 789, 797 (Minn. 2014) (quotation omitted). "Consequently, if relevant evidence has the effect of persuading the jury through illegitimate means, it must be excluded from trial." *State v. Hallmark*, 927 N.W.2d 281, 299 (Minn. 2019). A witness must provide testimony that is relevant and not repetitive. *State v. Richards*, 552 N.W.2d 197, 208 (Minn. 1996). A district court may limit the number of witnesses called by the parties. *Id.* (determining that it was not an abuse of discretion for the district court to exclude witnesses whose testimony it found would be repetitive based on offers of proof). Accordingly, district courts may exclude witnesses if the proposed evidence is needlessly repetitive. *Id*.

In *State v. Amos*, for example, the Minnesota Supreme Court determined that the district court did not abuse its discretion by excluding testimony the appellant offered, reasoning that the excluded testimony restated or repeated reputation evidence that the jury had heard from other witnesses, and therefore, it was "cumulative or unnecessary to the case." 347 N.W.2d 498, 502 (Minn. 1984) (discussing excluded testimony from a defendant claiming self-defense that he was aware of the victim's police record and reputation for violence); *see also State v. Buchanan*, 431 N.W.2d 542, 550-51 (Minn. 1988) (affirming the district court's decision to exclude as cumulative a defendant's testimony about "prior witnessing of street violence" offered to show his state of mind for self-defense).

The district court allowed House to call two witnesses to testify about M.L.'s reputation for untruthfulness after determining that reputation evidence from more than two witnesses would be unduly prejudicial. Like the excluded evidence in *Amos*, the excluded testimony offered by House duplicated other testimony. Additionally, the district court allowed House to offer testimony from House's wife, who contradicted M.L.'s testimony when she stated that she saw no sexual contact between House and M.L. Although House's wife did not testify about M.L.'s reputation for untruthfulness, her testimony challenged M.L.'s credibility.

The district court exercised its discretion when it determined that evidence about M.L.'s reputation for untruthfulness was admissible, but repetitive testimony about M.L.'s reputation should be excluded as unduly prejudicial. The excluded testimony would be unfairly prejudicial because repeated statements that M.L. is dishonest could persuade the jury by illegitimate means; namely, it could persuade the jury to render a verdict based on M.L.'s character. Thus, we conclude that the district court did not abuse its discretion when it limited the number of witnesses whom House could call to testify about M.L.'s reputation for untruthfulness.

## II. The district court did not abuse its discretion by excluding evidence about M.L.'s past sexual conduct.

Before trial, House filed an offer of proof summarizing evidence about M.L.'s prior sexual conduct. House described the evidence as showing that M.L. "was sexually abused by the children of a former significant other of M.L.'s mother. [The other children] also exposed him to pornography and masturbated in front of him." House argued that the

7

evidence "is admissible to show a source of sexual knowledge, among other things." The state objected, and the district court excluded the proposed evidence.

On appeal, House argues that the district court's decision to exclude this evidence violated his constitutional trial rights, including his right to present a complete defense, his right to confront his accuser, and his right to a fair trial. He argues first that the evidence that M.L. watched pornography and that other children masturbated "in front of him" is not M.L.'s "previous sexual conduct" under Minn. R. Evid. 412(1). Second, House contends that the excluded evidence was "necessary to prevent the violation of [the] defendant's constitutional rights" because the evidence was admissible to prove (a) "M.L.'s source of sexual knowledge (an alternative source of sexual knowledge other than allegedly being abused by [House])" and (b) "M.L.'s motive to fabricate abuse at the hands of [House] to extricate himself from being in trouble for having been caught watching pornography." The state argues that the evidence was properly excluded under Minn. R. Evid. 412. This court reviews the district court's ruling for an abuse of discretion. *Ali*, 855 N.W.2d at 249. We discuss each of House's arguments.

**A.**     **The excluded evidence concerns M.L.'s "previous sexual conduct"; therefore, Minnesota Rule of Evidence 412 governs our analysis.**

Minnesota Rule of Evidence 412(1) provides that "[i]n a prosecution for acts of criminal sexual conduct . . . evidence of the victim's previous sexual conduct shall not be admitted nor shall any reference to such conduct be made in the presence of the jury." "Sexual conduct" includes more than just consensual acts by the victim. *State v. Kobow*, 466 N.W.2d 747, 750 (Minn. App. 1991), *rev. denied* (Minn. Apr. 18, 1991). The

8

Minnesota Supreme Court has treated "sexual conduct" broadly and has held that it includes evidence of cohabitation and sexual preference. *State v. Mar*, 291 N.W.2d 223, 225 (Minn. 1980) (concluding that "testimony offered to show [the victim] had a history of homosexual relationships is clearly within the exclusionary rule"); *State v. Hill*, 244 N.W.2d 728, 731 (Minn. 1976) (holding that "evidence of complainant's prior cohabitation with two men did not have sufficient probative value . . . to permit its introduction on the issue of whether or not she consented to sexual relations").

In his brief to this court, House argues that "two-thirds of the evidence sought to be admitted does not fall within Rule 412, arguably." House contends that viewing pornography is not sexual conduct and that "other juvenile males masturbating in front of M.L. is not M.L.'s 'previous sexual conduct' in the words of the rule" because he was not engaging in the sexual conduct. The state disagrees.

We note that in his brief to this court, House describes the excluded evidence as "intertwined." In other words, House did not propose to offer three distinct pieces of evidence. House's counsel stated during district court proceedings that the sexual abuse by other children who showed M.L. pornography and masturbated in front of M.L. was "linked because . . . all these things happen at the same time. They masturbated in front of him, they showed him pornography, and they sexually abused him. So it wouldn't make any sense to discuss one without the other." In his brief to this court, House agrees that the prior sexual abuse of M.L. is covered by Minn. R. Evid. 412 as "previous sexual conduct" but contends that it is nevertheless admissible under an exception to rule 412, an argument we discuss below.

9

Given that the excluded evidence is intertwined with and includes prior sexual abuse of M.L., we conclude that our analysis is governed by rule 412. We therefore need not determine whether watching pornography or seeing other children masturbate is M.L.'s "sexual conduct." Even so, we note that appellate courts have broadly construed "sexual conduct." *Mar*, 291 N.W.2d at 225; *Hill*, 244 N.W.2d at 731. Thus, evidence that M.L. watched pornography and saw other children masturbate likely falls within the sexual conduct covered by rule 412.

### B. The source-of-sexual-knowledge exception does not apply to the excluded evidence.

Even though rule 412 generally excludes evidence of a victim's previous sexual conduct, the evidence may be admissible under an exception if "constitutionally required by the defendant's right to due process, his right to confront his accusers, or his right to offer evidence in his own defense." *State v. Benedict*, 397 N.W.2d 337, 341 (Minn. 1986). For example, a victim's previous sexual conduct that shows another source of sexual knowledge may be admitted to prove the victim's "familiarity with sexual matters in circumstances where the jury otherwise would likely infer that the defendant was the source of the knowledge." *Id.* This exception ordinarily applies when a fact-finder would likely infer that a victim would not have sexual knowledge from a source other than the defendant. *See State v. Wenthe*, 865 N.W.2d 295, 307 (Minn. 2015); *State v. Kroshus*, 447 N.W.2d 203, 205 (Minn. App. 1989) (stating that the district court erred in excluding evidence of prior sexual abuse where the jury "could infer that [the victim] could not have made the

allegations involving [defendant] unless the events she described had occurred"), *rev. denied* (Minn. Dec. 20, 1989).

On appeal, House argues that the excluded evidence shows "an alternative source of [M.L.'s] sexual knowledge other than allegedly being abused by" House. The state disagrees and points out that "it is reasonable for a jury to assume that M.L. gained sexual knowledge through movies, television, sex education classes, the internet, and conversations with friends."

We conclude that this exception does not apply based on the record in this case. M.L. was 14 years old at the time of the charged sexual assault, and nothing in the record suggests that his sexual knowledge differed from that of an ordinary teenager. *Cf. Kroshus*, 447 N.W.2d at 205 (stating that the adult victim had a developmental disability and "was not educated about sexual matters"). The jury here therefore would not likely infer that House was the only source of M.L.'s sexual knowledge, unlike the jury in *Kroshus*. Accordingly, the district court did not abuse its discretion by rejecting House's argument that the source-of-sexual-knowledge exception applies.

### C. The motive-to-fabricate-charges exception does not apply to the excluded evidence.

Caselaw indicates that evidence otherwise inadmissible under rule 412 may be received if it "tends to establish a [victim's] predisposition to fabricate a charge of rape." *State v. Caswell*, 320 N.W.2d 417, 419 (Minn. 1982). Evidence of a victim's prior sexual conduct is relevant to the victim's credibility if it shows that "the complainant had made a prior false accusation of rape." *State v. Gerring*, 378 N.W.2d 94, 96-97 (Minn. App. 1985).

11

On appeal, House argues that the excluded evidence was admissible under this exception because it "show[s] M.L.'s motive to fabricate abuse at the hands of Mr. House to extricate himself from being in trouble for having been caught watching pornography." The state points out that House does not contend that the excluded evidence shows that M.L. fabricated any prior accusations of sexual abuse.

We agree with the state that the record does not indicate that M.L. previously falsely alleged sexual abuse. To the contrary, House asserts that other children sexually abused M.L., and House's attorney stated during oral argument to this court that M.L. previously had not made false accusations of sexual abuse. As for M.L.'s "motive to fabricate," we note that nothing in the record suggests that House discovered M.L. watching pornography or that he punished M.L. To the contrary, the excluded evidence involved M.L. and his mother. Accordingly, the district court did not abuse its discretion by refusing to apply the motive-to-fabricate-charges exception.

In sum, because the excluded evidence falls under the exclusionary rule in Minn. R. Evid. 412 and neither exception to that rule applies, the district court did not abuse its discretion by excluding the evidence.

### III. The district court did not abuse its discretion by admitting evidence of past sexual assaults by House.

Before trial, the state moved to permit M.L. to testify about instances when House sexually assaulted him prior to the charged offense date of January 24, 2020. The state argued that this evidence would "show proof of motive, opportunity, intent, preparation,

12

plan and absence of mistake or accident." House objected, and the district court ruled that M.L.'s testimony about prior abuse was admissible under Minn. R. Evid. 404(b)(1).

On appeal, House argues that the district court abused its discretion by admitting evidence of House's other sexual assaults; House also contends that the evidence's admission violated his right to due process and a fair trial. He argues that the evidence was used to show his propensity for sexual assault and is not relevant to the other permissible purposes under rule 404(b)(1). The state disagrees for reasons discussed below.

Under Minn. R. Evid. 404(b)(1), "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b)(1). Evidence of prior crimes or wrongdoing is often called "*Spreigl* evidence." *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998) (citing *State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965)). Appellate courts review the admission of *Spreigl* evidence for abuse of discretion. *State v. Blom*, 682 N.W.2d 578, 611 (Minn. 2004). "A defendant who claims the trial court erred in admitting evidence bears the burden of showing the error and any resulting prejudice." *Kennedy*, 585 N.W.2d at 389.

House's brief to this court challenges four of the five steps required to admit *Spreigl* evidence. The five steps are as follows:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and

13

> (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*State v. Ness*, 707 N.W.2d 676, 686 (Minn. 2006).

We consider House's arguments about steps 1, 2, 4, and 5 in turn. Although the district court did not specifically discuss each of the five steps, the record nonetheless supports the district court's decision.

*Step #1: The State's Notice of the Challenged Evidence*

On appeal, the parties agree that the state provided notice of its intent to admit *Spreigl* evidence in its motions in limine. House's brief to this court argues that the notice was not timely because the state filed its motion after the omnibus hearing and only three days before trial. The state argues that it provided sufficient notice before trial and points out that the amended complaint included a "detailed description of the uncharged instances of sexual abuse."

The state is obligated to notify a defendant of its intent to admit *Spreigl* evidence "within a reasonable time before trial." *State v. Bolte*, 530 N.W.2d 191, 197 (Minn. 1995). The notice should "give a defendant sufficient opportunity to prepare for trial and . . . avoid situations where a defendant must defend against unexpected testimony regarding prior offenses." *Id.*

House does not argue any prejudice linked to the notice, nor does he cite any legal authority supporting his position that three days is not reasonable notice. Because the state's motion in limine and the amended complaint's description of House's past sexual assaults notified House of the state's intent to offer the *Spreigl* evidence and gave House

an opportunity to object and prepare, we conclude that the district court did not abuse its discretion on this step of the *Spreigl* analysis.

*Step #2: The State's Offer of the Spreigl Evidence*

In his brief to this court, House argues that "the State did not clearly demonstrate what [the *Spreigl* evidence] was offered to prove."[1] The state disagrees and contends that its motions in limine indicated that the *Spreigl* evidence would be offered to "show proof of motive, opportunity, intent, preparation, plan and absence of mistake or accident." While House disputes whether the evidence actually was used for this purpose, his argument does not relate to step 2 of the *Spreigl* analysis. Nor does he cite any legal authority for his argument. "An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) (quotation omitted). Accordingly, we conclude that the district court did not abuse its discretion under this step.

*Step #4: The Spreigl Evidence and Permissible Purposes Under Rule 404(b)(1)*

House argues that the challenged evidence is not relevant to the state's case or the permissible purposes identified in Minn. R. Evid. 404(b)(1). The state argues that the *Spreigl* evidence is relevant to show House had "a common scheme or plan" and rebuts House's argument that M.L. lied about the sexual assault on January 24, 2020.

---

[1] House's brief to this court refers to a "conviction," but the record does not include any evidence of a prior conviction.

Generally, for *Spreigl* evidence to be relevant, it must "be similar in some way—either in time, location, or modis operandi—to the charged offense." *State v. Filippi*, 335 N.W.2d 739, 743 (Minn. 1983). *Spreigl* evidence is admissible to show a common scheme or plan of sexual assault and for the jury to determine "whether the conduct on which the charge was based actually occurred or was . . . a fabrication . . . by the victim." *State v. Wermerskirchen*, 497 N.W.2d 235, 240-42 (Minn. 1993).

Prior caselaw is helpful to our analysis. In *State v. Shuffler*, the supreme court affirmed a conviction for sexual assault, rejecting the appellant's challenge to *Spreigl* evidence. *Id.* at 241 (citing *State v. Shuffler*, 254 N.W.2d 75, 76 (Minn. 1977)). The supreme court determined that evidence the appellant had previously sexually assaulted another victim in a similar manner was admissible to show a common scheme or plan because this evidence was relevant to the "key factual issue" of whether the victim fabricated the abuse. *Id.* (citing *Shuffler*, 254 N.W.2d at 76). In *State v. Anderson*, the supreme court affirmed a conviction for sexual abuse involving the appellant's stepdaughter, rejecting the appellant's challenge to *Spreigl* evidence. 275 N.W.2d 554, 555-56 (Minn. 1978). The district court had allowed evidence that the appellant previously sexually abused the victim's half-sister as relevant to show a common scheme or plan and to rebut the appellant's argument that the victim fabricated the abuse. *Wermerskirchen*, 497 N.W.2d at 241 (citing *Anderson*, 275 N.W.2d at 554).

Here, the state offered M.L.'s testimony to prove that House previously had assaulted M.L. in the years leading up to the charged incident. Each prior incident involved similar sexual conduct and occurred when House had isolated M.L. in House's residence

or while hunting. House argued during trial that M.L. lied about the abuse, and his brief to this court states that "[t]he nature of the allegations here was that either [House] committed the alleged crime, or no one did." Thus, the jury needed to determine whether M.L. fabricated the abuse. As discussed in *Shuffler* and *Anderson*, evidence of prior sexual abuse is relevant to show a common scheme or plan and specifically to determine whether the victim fabricated the charged events. *Id*. Thus, we conclude that the district court did not abuse its discretion when it determined that House's prior conduct was relevant to show a common scheme or plan and to rebut House's argument that M.L. fabricated the January 24, 2020 assault.

*Step #5: The Probative Value and Potential Prejudice of the Spreigl Evidence*

House argues that the *Spreigl* evidence is more prejudicial than probative because it was character evidence used to show House's propensity to assault M.L. The state disagrees and argues that evidence of House's prior abuse of M.L. was "central to the State's case" for the reasons discussed in step 4.

The potential prejudice of evidence does not outweigh its probative value if it merely hurts one party's case. *State v. Welle*, 870 N.W.2d 360, 366 (Minn. 2015). To be excluded on the fifth step, the *Spreigl* evidence must create some "unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Id.* (quotation omitted). As discussed above, *Spreigl* evidence of a prior sexual assault may be offered to show "whether the conduct on which the charge was based actually occurred or was . . . a fabrication"; but a prior sexual assault may not be admitted "for the improper purpose of

showing that the defendant was a bad person in order to raise an inference that he acted in conformity with his bad character." *Wermerskirchen*, 497 N.W.2d at 241-42.

House relies on caselaw to argue that the challenged evidence was more prejudicial than probative because it was "contextually similar" to the charged offense and could lead a juror to focus on House's character. He points to *State v. Smith*, in which this court determined that the district court abused its discretion when it allowed evidence of the appellant's prior conviction for unlawful possession of a firearm in a trial for the same charge. 749 N.W.2d 88, 95 (Minn. App. 2008). House also cites a nonprecedential opinion, *State v. Black*, in which this court determined that the district court improperly permitted evidence of the appellant's two prior convictions for sexual assault in a sexual-assault trial. No. A06-2390, 2008 WL 4628227, at *4-6 (Minn. App. Oct. 21, 2008).

We are not persuaded by House's arguments because both *Smith* and *Black* are distinguishable. In *Smith*, the state did not contend that the appellant's prior conviction for unlawful possession of a firearm was relevant to show an ongoing scheme nor was fabrication an issue. 749 N.W.2d at 95. In *Black,* the disputed *Spreigl* evidence did not involve the same victim, as it does here, and the *Spreigl* evidence involved prior convictions, which are generally more prejudicial. 2008 WL 4628227 at *2.

Here, the *Spreigl* evidence involved prior sexual assaults of M.L. by House. As explained above, the *Spreigl* evidence is probative to determine whether the alleged assault occurred or M.L. fabricated it. Nothing in the record suggests that the state used the *Spreigl* evidence to imply that House is of bad character and acted in conformity with that character. Indeed, the district court gave the appropriate limiting instruction to the jury and

18

the prosecuting attorney only briefly referred to the *Spreigl* evidence during closing argument. Accordingly, the district court did not abuse its discretion by admitting the *Spreigl* evidence under this step.

In sum, after examining the four challenges House raises on appeal, we conclude that the district court did not abuse its discretion by admitting the *Spreigl* evidence. Because the district court did not abuse its discretion, we need not consider House's argument about whether the alleged error was prejudicial.

## IV.  The district court did not abuse its discretion by excluding evidence from witnesses who would have testified that they did not observe sexual contact between House and M.L.

House's witness list identified seven witnesses whom he intended to call to offer evidence about instances when they were with House and M.L. and did not observe any sexual contact. The state objected and asked the district court to exclude these witnesses. The district court ruled that only House's wife would be permitted "to testify with respect to evidence of prior instances" of sexual abuse because M.L. testified that House's wife "walked in on [M.L.] and [House] during one of these prior [sexual] contacts." The district court excluded House's other witnesses offered for this purpose.[2]

On appeal, House argues that by excluding testimony from these witnesses, the district court violated his right to a fair trial, to present a complete defense, and to due process. The state argues that the district court acted within its discretion by excluding the

---

[2] House stated on his witness list that A.H. and G.L. would testify about this subject. The district court allowed them to testify about M.L.'s reputation for dishonesty, but not about instances in which they did not see sexual contact between House and M.L.

witnesses based on relevance, unfair prejudice, and the witnesses' lack of personal knowledge.

A defendant has a right to "call and examine witnesses." *State v. Munt*, 831 N.W.2d 569, 585 (Minn. 2013). This right is generally subject to the rules of evidence unless the district court's ruling is arbitrary, unfair, or impacts a weighty interest. *State v. Pass*, 832 N.W.2d 836, 841-42 (Minn. 2013). Under Minn. R. Evid. 602, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Minnesota Rule of Evidence 402 requires that all evidence must be relevant, and Minn. R. Evid. 401 defines relevant evidence as evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Under Minn. R. Evid. 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As discussed above, a district court may limit the number of witnesses called at trial to avoid unnecessary repetitive evidence. *Richards*, 552 N.W.2d at 208. This court "will not reverse an evidentiary ruling absent a clear abuse of discretion." *Ali*, 855 N.W.2d at 249.

We agree with the state that the district court did not abuse its discretion by allowing House's wife to testify and excluding the other six witnesses. House's wife was the only person who M.L. testified was present during a prior instance of sexual assault by House. House did not claim that the other witnesses he identified were present during any incident

20

that M.L. testified included sexual abuse. Therefore, given that the other six witnesses were not present for any alleged abuse, they lacked personal knowledge under rule 602 to testify about whether any sexual abuse occurred. Also, the excluded testimony had little probative value and was needlessly repetitive. Thus, although the district court did not provide a specific basis for excluding the six witnesses, its decision to sustain the state's objection was within its discretion under rules 403 and 602.

V.      **House's argument that the cumulative weight of errors during his trial warrants reversal is not persuasive.**

An appellate court may reverse a conviction based on cumulative trial errors if "errors and indiscretions, none of which alone might have been enough to tip the scales, operate to the defendant's prejudice by producing a biased jury." *State v. Hill*, 801 N.W.2d 646, 659 (Minn. 2011) (quotation omitted). House argues that, if the issues raised in his brief to this court do not warrant a reversal when considered separately, their cumulative effect supports reversal and a new trial. Because the district court did not err in any rulings House challenged, no cumulative error occurred. Thus, we conclude that House is not entitled to reversal of his conviction.

VI.     **The district court did not abuse its ample discretion when it denied House's request for a downward departure and imposed a sentence within the range prescribed by the Minnesota Sentencing Guidelines.**

Before the sentencing hearing, House moved for a downward dispositional and durational departure, submitted a legal memorandum, and filed ten letters describing his good character and strong religious faith. In his motion, House asked the district court to grant a dispositional departure and sentence him to "no more than one year in jail (not

prison) or one year of house arrest" or, in the alternative, grant a durational departure and sentence him to "no more than 24 months" in prison.

The district court ordered a presentence investigation and received the subsequent written report, which stated that "this is a serious offense and [House] has failed to take any responsibility, therefore he represents a significant public safety concern." The presentence-investigation report recommended a sentence of 144 months, which is at the bottom of the prescribed range under the Minnesota Sentencing Guidelines.

During the sentencing hearing, M.L. and M.L.'s mother made impact statements and two witnesses testified about House's character. The district court heard arguments from House's counsel, who argued that the district court should grant downward dispositional and durational departures based on the support of House's friends and family. House made a brief statement at the hearing and asked to be sentenced to twelve months in jail.

The district court stated that House's failure to "come clean" about the criminal sexual conduct weighed against his amenability to probation, found that his offense was not more or less "onerous" than "a typical offense of this nature," and denied House's request to depart from the Minnesota Sentencing Guidelines. The district court then sentenced House to 144 months in prison.

On appeal, House argues that the district court abused its discretion by denying his motion for a downward dispositional departure because "substantial and mitigating factors warranted a departure" and he is "especially amenable to probation." The state argues that the district court imposed a sentence supported by the record.

An appellate court reviews a district court's decision denying a motion to depart from the sentencing guidelines for abuse of discretion. *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016). "Only in a rare case will a reviewing court reverse the imposition of a presumptive sentence." *State v. Pegel*, 795 N.W.2d 251, 253 (Minn. App. 2011). Appellate courts should "not interfere with the sentencing court's exercise of discretion, as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Van Ruler*, 378 N.W.2d 77, 80-81 (Minn. 1985).

The Minnesota Sentencing Guidelines provide a range of presumptive sentences for felony convictions, depending on the seriousness of the offense and the defendant's criminal history. Minn. Sent'g Guidelines 1.A.3, 4 (Supp. 2019). The legislature's stated purpose for the guidelines is to "maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5(2) (2018). Accordingly, deviations from the guidelines are not common and are discouraged. *Solberg*, 882 N.W.2d at 623. District courts must impose a sentence within the guidelines range unless there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (Supp. 2019).

A downward departure requires mitigating factors, but even if mitigating circumstances are present, a district court may decline to deviate from the sentencing guidelines. *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984). Mitigating factors that district courts may consider when determining whether to grant a downward dispositional departure include "the defendant's age, his prior record, his remorse, his cooperation, his

23

attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). We often refer to these factors as the "*Trog* factors."

House urges us to conclude that the district court abused its discretion based on his evidence of support from family and friends, his cooperation during trial, as well as his cooperation with the presentence investigation. The letters and presentence-investigation report showed that House had the support of friends and family and that House was cooperative throughout the process. But House's sentencing argument was silent on the other *Trog* factors that weigh against a dispositional departure, such as House's lack of remorse and failure to take accountability for his actions. Indeed, House's sentencing memorandum maintained his innocence.

The district court stated that it considered the arguments presented at the sentencing hearing, the letters written in support of House, and the sentencing guidelines before it sentenced House. The district court balanced the appropriate considerations in light of the record and determined that a presumptive guidelines sentence was warranted. We conclude that the district court did not abuse its discretion when it denied House's motion for a dispositional departure.

**Affirmed.**